IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 23, 2018 Session

## KATHRYN NICOLE BROWN v. TYLER MATTHEW BROWN

**Appeal from the Chancery Court for Hamilton County**
**No. 16-0577      Pamela A. Fleenor, Chancellor**

_____

**No. E2017-01629-COA-R3-CV**

_____

In this divorce action, the wife was shown to be economically disadvantaged compared to the husband, and the trial court awarded to the wife a slightly greater share of the marital estate in addition to rehabilitative alimony in the amount of $4,000.00 per month for a period of four years. The husband has appealed. Although we conclude that the trial court's judgment should be affirmed, we also modify that judgment to include an indemnification clause in the husband's favor regarding the mortgage on the marital residence. We further grant the wife's request for an award of attorney's fees incurred in defending this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed as Modified; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, JJ., joined.

Alan R. Beard, Chattanooga, Tennessee, for the appellant, Tyler Matthew Brown.

John P. Konvalinka and Katherine H. Lentz, Chattanooga, Tennessee, for the appellee, Kathryn Nicole Brown.

**OPINION**

I.  Factual and Procedural Background

The plaintiff in this action, Kathryn Nicole Brown ("Wife"), filed a complaint for divorce against the defendant, Tyler Matthew Brown ("Husband"), on August 24, 2016, in the Hamilton County Chancery Court ("trial court"). In her complaint, Wife averred

that the parties had been married since 2009 and had two minor children. Wife asserted that she should be granted a divorce because Husband was guilty of inappropriate marital conduct. Wife requested that the court divide the parties' assets and liabilities, fashion an appropriate permanent parenting plan designating her as primary residential parent, and award her child support and alimony. Wife concomitantly filed a proposed permanent parenting plan, which designated an annual residential co-parenting schedule allowing her 285 days with the children, with the remaining eighty days allotted to Husband.

Husband filed an answer and counter-complaint on September 15, 2016, denying that he had been guilty of inappropriate marital conduct. Husband averred instead that the parties had irreconcilable differences or that Wife was guilty of inappropriate marital conduct. Husband filed a proposed permanent parenting plan, which designated Husband as the primary residential parent and provided each party with equal co-parenting time. On January 3, 2017, the parties attended mediation and reached a temporary agreement, although a copy of such agreement does not appear in the appellate record.

The trial court conducted a bench trial concerning this matter on June 30, 2017. The parties were the sole witnesses to testify. Wife related that the parties had married in 2009 when she was eighteen years of age. According to Wife, her only employment during the marriage had been as a nanny for approximately two months. Wife explained that she was currently a stay-at-home mother caring for the parties' two children, ages three and two.

Wife had recently begun taking a course in computer design and front-end programming, which Husband had funded. Although she expected to graduate from this course in April 2018, she had not yet sought employment in that field. Wife had no income at the time of trial and listed monthly expenses of $4,277.28. Furthermore, she was unsure what her earning potential would be upon graduation.

Wife opined that the parties' marital residence was worth $300,000.00. In support, she had considered the sale prices of other homes in her neighborhood when determining this value. Wife expressed her desire to remain in the marital residence with the children because smaller homes in the area cost at least $1,400.00 per month in rent and the monthly mortgage payment on her current residence was only $1,785.00.

Husband testified that he was currently employed as a software engineer with a base salary of $155,000.00 per year. He also received employee stock options from his employer, although such benefit had not yet vested. According to Husband, he was paying $1,420.00 per month in rent for a residence near the marital home. Husband also explained that during the pendency of the divorce, he had paid $4,200.00 per month to

2

Wife in support of the children and her pursuant to the parties' mediated temporary agreement.

Husband testified that the parties purchased the marital residence in October 2015 for $300,000.00 but that he believed the value of the home had risen to $350,000.00 by the time of trial based on increased housing prices in the area. Husband's expressed desire was for the marital residence to be sold because Wife could not refinance the mortgage in her sole name. Husband explained that the field in which Wife was studying was closely related to his employment, and in his opinion there would be significant employment opportunities for her in the area. Husband did not dispute Wife's claimed expenses for food, clothing, or recreation.

Following the hearing, the trial court entered a "Memorandum Opinion and Final Decree of Divorce" ("Final Decree") on July 21, 2017. In its Final Decree, the court stated that the parties had agreed to a permanent parenting plan, which the court determined to be in the best interest of the children. The parties had also agreed to the appropriate amount of child support, according to the Tennessee child support guidelines, to be paid by Husband. The court therefore determined that only the issues of grounds for divorce, proper division of marital assets and debts, and spousal support remained.

The trial court found that both parties were credible witnesses at trial. The court further found that Husband had admitted his infidelity during the marriage, thereby establishing grounds for divorce. With respect to the issue of marital property and debt division, the court made findings concerning the factors listed in Tennessee Code Annotated § 36-4-121. Following its findings regarding the pertinent statutory factors, the trial court ultimately awarded to Wife assets valued at $50,600.00 and to Husband assets valued at $36,520.00. Included in this division was the trial court's award to Wife of the marital residence, valued at $310,000.00, along with responsibility for payment of the attendant mortgage balance of $277,000.00.

The trial court next considered the statutory factors related to an award of alimony, codified at Tennessee Code Annotated § 36-5-121. Following its analysis of the pertinent statutory factors, the court awarded to Wife rehabilitative alimony in the amount of $4,000.00 per month for a period of four years. The court also awarded to Wife attorney's fees in the amount of $7,000.00 as alimony *in solido*.

On August 8, 2017, the trial court entered an agreed order amending the Final Decree to provide specifically for the adoption and incorporation of the parties' agreed permanent parenting plan. Husband subsequently filed a timely notice of appeal.

Following the filing of the notice of appeal, the trial court entered an order *sua sponte* on August 21, 2017, amending the Final Decree to provide for divestment of Husband's interest in the marital residence and directing that if Husband failed to sign a quitclaim deed regarding such interest, the clerk and master could do so on Husband's behalf. The court also amended its earlier award of attorney's fees in favor of Wife, providing instead that Wife's counsel could submit an affidavit regarding the fees and expenses incurred, whereupon the court would determine a reasonable amount of fees to be awarded. Thereafter, Husband filed a "Motion to Vacate and Set Aside Order for Want of Jurisdiction," asserting that the trial court was without jurisdiction to amend its earlier Final Decree following the filing of the notice of appeal. Husband also filed a motion seeking a stay of the trial court's judgment pending appeal.

On September 22, 2017, Wife's counsel filed an affidavit regarding attorney's fees, wherein Wife's counsel stated that Wife had incurred attorney's fees and expenses in the amount of $12,664.99. Husband subsequently filed an amended motion seeking a stay of the trial court's judgment.

Following oral argument in this Court, Husband's attorney filed a motion seeking to supplement the record with the trial court's subsequently entered agreed order concerning a stay and award of attorney's fees. On August 28, 2018, the trial court entered an agreed order awarding to Wife attorney's fees and expenses in the amount of $12,664.99. The trial court also granted Husband a stay pending appeal. The court's order further provided that Husband would pay to Wife $200.00 per month toward the attorney's fee award, and if Husband failed to do so, the stay would be lifted. This Court granted Husband's motion to supplement the appellate record on September 13, 2018.

## II. Issues Presented

Husband presents the following issues for our review, which we have restated slightly:

1.   Whether the trial court erred by permitting Wife to introduce warranty deeds and testimony concerning the value of other nearby properties when presenting her opinion regarding the value of the marital residence.

2.   Whether the trial court erred by awarding title to the marital residence solely to Wife and declining to order that the home be sold or the mortgage refinanced.

4

3. Whether the trial court erred by awarding to Wife rehabilitative alimony in the amount of $4,000.00 per month for a period of four years.

Wife presents the following additional issue, which we have also restated slightly:

4. Whether Wife should be awarded her attorney's fees incurred on appeal.

## III. Standard of Review

As our Supreme Court has previously explained in regard to the trial court's decisions concerning admissibility of evidence:

> Generally, the admissibility of evidence is within the sound discretion of the trial court. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992). The trial court's decision to admit or exclude evidence will be overturned on appeal only where there is an abuse of discretion. *Id*. A trial court abuses its discretion "only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

*Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004).

Our Supreme Court has elucidated the applicable standard of appellate review in a case involving the proper classification and distribution of assets incident to a divorce as follows:

> This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith,

and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). Questions related to the classification of assets as marital or separate are questions of fact. *Bilyeu v. Bilyeu*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005).

Furthermore, as this Court has previously held:

Because Tennessee is a "dual property" state, a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate. Separate property is not subject to division. In contrast, Tenn. Code Ann. § 36-4-121(c) outlines the relevant factors that a court must consider when equitably dividing the marital property without regard to fault on the part of either party. An equitable division of marital property is not necessarily an equal division, and § 36-4-121(a)(1) only requires an *equitable* division.

*McHugh v. McHugh*, No. E2009-01391-COA-R3-CV, 2010 WL 1526140, at *3-4 (Tenn. Ct. App. Apr. 16, 2010) (internal citations omitted). *See also Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (holding that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.").

Regarding alimony, our Supreme Court has repeatedly observed that "trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *See Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). The High Court further explained:

[A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal

support decision." *Kinard* [*v. Kinard*], 986 S.W.2d [220,] 234 [(Tenn. Ct. App. 1998)]. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson* [*v. SAIA, Inc.*], 318 S.W.3d [328,] 335 [(Tenn. 2010)] (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision.

*Id*. at 105-06 (other internal citations omitted).

## IV. Evidence of Marital Residence Value

Husband's first issue concerns the trial court's decision to allow Wife to testify regarding the value of the parties' marital residence and "submit as evidence deeds of random homes in the area to prove the value" of the marital residence. Wife contends that the trial court properly allowed her to introduce deeds related to comparable properties when she testified as to her opinion of the marital residence's value, particularly because such deeds were authenticated pursuant to Tennessee Rules of Evidence 901 and 902.

As this Court has previously elucidated:

It is well established law in Tennessee that an owner of property may testify as to value of that property. As stated in *State ex rel. Smith v. Livingston Limestone Co., Inc.*, 547 S.W.2d 942, 943 (Tenn. 1977):

In most states, and in Tennessee, the owner of real property is held to be qualified, by reason of his ownership alone, to give an opinion in evidence of the value of his land. Because of his interest in the land as its owner, it is presumed that he knows the value of it; hence, he qualifies as a witness by showing mere ownership.

*Airline Const., Inc. v. Barr*, 807 S.W.2d 247, 254-55 (Tenn. Ct. App. 1990) (internal citations omitted). *See Stinson v. Stinson*, 161 S.W.3d 438, 446 (Tenn. Ct. App. 2004) ("[A]n owner of property is competent to testify as to the value of such property.").

In this matter, Wife testified that, in her opinion, the marital residence should be valued at $300,000.00. Wife explained that she based her opinion regarding the home's value in part on her review of the sale prices of other nearby homes in the neighborhood. Wife then presented certified copies of three deeds demonstrating such sales, to which Husband's counsel objected. The trial court allowed Wife to file the deeds as exhibits to her testimony, although the court explained that Husband's counsel could cross-examine Wife regarding the weight to be afforded to such evidence. Husband's counsel did not further mention the deeds.

During his subsequent testimony, Husband opined that the marital residence should be valued at $350,000.00. Husband explained that the parties had purchased the home in 2015 for $300,000.00 and that he believed the prices in the neighborhood had "skyrocketed" since that time.

As Husband concedes in his appellate brief, Tennessee Rule of Evidence 701 "permits a lay witness to testify as to the value of her own property, whether real or personal . . . ." *See* Tenn. R. Evid. 701 (b) ("A witness may testify to the value of the witness's own property or services."). Husband argues, however, that the deeds relating to other homes should not have been admitted because by allowing the introduction of such deeds as evidence, the trial court permitted Wife to render a lay opinion regarding the value of the three home sales demonstrated by the deeds presented. Husband contends that because Wife's lay opinion as a non-owner regarding the value of the other homes was not admissible, her testimony that the "marital home is worth what the other comparable real estate is worth is likewise inadmissible."

Based upon our thorough review of the record, we disagree with Husband's contention. When questioned regarding specific items listed on her asset and liability statement, Wife explained that she had placed a value of $300,000.00 on the marital residence and that her opinion as to value was based in part on the sale prices of other homes in the neighborhood. During his subsequent testimony, Husband acknowledged

that the parties purchased the marital home for $300,000.00 in October 2015, some twenty months before trial, and neither party testified to having made any significant improvements to the home since that time. Although Husband valued the marital residence at $350,000.00 at the time of trial, he explained that he had likewise considered that "prices of the houses [in the neighborhood] have been going up dramatically over the last five years."

Despite Husband's protestations to the contrary, we discern no significant distinction between Husband's and Wife's respective testimonies regarding their methodologies in valuing the marital residence. Each party presented a lay opinion concerning the value of his or her own property, as permitted by Tennessee Rule of Evidence 701, and both parties relied in part on the prices of other homes within the neighborhood when doing so. The admission of deeds representing nearby home sales did not constitute reversible error, especially when Husband has not demonstrated that the trial court relied on such evidence in making its determination of the marital residence's value.

In its Final Decree, the trial court stated the following concerning the marital residence and its value:

> Wife values the Residence at $300,000.00. Husband values the Residence at $350,000.00. The Court finds the value of the Residence to be $310,000.00.

The trial court thus appears to have relied solely on the parties' opinions regarding value when making its valuation determination. We note that "[w]hen valuation evidence is conflicting, the court may place a value on the property that is within the range of the values represented by all the relevant valuation evidence." *Owens v. Owens*, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007). This is precisely what the trial court did in the instant action. In addition, we note that decisions regarding valuation of property present issues of fact, and the trial court's decision regarding value is entitled to great weight on appeal and "will not be second-guessed unless [it is] not supported by a preponderance of the evidence." *Id*. We conclude that the trial court's determination of the marital residence's value was supported by a preponderance of the evidence and was within the range of values presented by the parties. We therefore affirm the trial court's marital residence valuation decision.

## V. Disposition of Marital Residence

Husband next takes issue with the trial court's decision to award title to the parties' marital residence to Wife without ordering Wife to refinance the mortgage and

thereby remove Husband's obligation from the debt. Husband alternatively asserts that the trial court should have ordered that the marital residence be sold and the proceeds divided equally between the parties. In its Final Decree, the trial court awarded the marital residence, along with its attendant mortgage obligation, to Wife, noting that it would be difficult for Wife and the children to relocate and that a comparable dwelling place would cost more in rent than the monthly mortgage payment concerning the marital residence.

Husband contends that the consequence of the trial court's decision is to place Husband "in hoc[k]" to Wife by means of the present mortgage on the marital residence. Husband thus argues that the parties "are essentially in business together, where the Husband relies on the Wife to pay the mortgage so that he remains credit-worthy." Wife contends that the trial court did not require the parties to jointly own any asset following the divorce. Wife further asserts that the court did not err in awarding the marital residence to Wife when there was sufficient proof that renting a comparable dwelling would cost more than the monthly mortgage payment. We agree with Wife.

In a divorce action wherein a similar argument was advanced, this Court explained:

> Decisions regarding the division of marital property are fact-specific and require consideration of many circumstances surrounding the property and the parties. *Downing v. Downing*, No. M2010-00045-COA-R3-CV, 2011 WL 2418732, at *5 (Tenn. Ct. App. June 13, 2011). Trial courts have broad discretion in fashioning an equitable division of marital property, and appellate courts accord great weight to the trial court's decision. *Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007). Wife does not cite any caselaw on appeal to suggest that the trial court erred in making its decision regarding the mortgage, and she does not suggest any specific options for removing her name from the mortgage that appear to be feasible under the circumstances.

>> In divorce proceedings, courts cannot disturb the rights of the parties' creditors to collect joint obligations from either or both of the divorcing parties. *Blake v. Amoco Fed. Credit Union*, 900 S.W.2d 108, 111 (Tex. App. 1995).

>> It is not uncommon in divorce cases to turn over the ownership of a marital asset to one party while the parties remain jointly liable for the debt associated with the asset. While it is possible to order one party to make the monthly

10

payments on a joint debt, the court cannot absolve the other party from his or her liability to the creditor. It is also unlikely that a creditor will readily agree to release a solvent debtor simply because of a divorce. Thus, if the party who has been ordered to make the monthly payments on a joint debt defaults, the other party becomes responsible for the debt and the late charges and runs the risk of damage to his or her credit rating.

Courts and lawyers have devised several ways to address this problem. The court may order, or the parties may agree, that the person awarded the property will refinance it or obtain a new loan in his or her own name and then use the proceeds to pay off the existing joint debt. The court may also order, or the parties may agree, that the property will be owned jointly until a date certain when the property must either be financed or sold. Finally, the parties or the courts may include a "hold harmless" provision in the decree or marital dissolution agreement in which the parties are required to indemnify and hold each other harmless from any and all future obligations stemming from ownership of the property they receive.

*Long v. McAllister-Long*, 221 S.W.3d 1, 10 (Tenn. Ct. App. 2006). In the absence of any other feasible alternatives, the trial court in this case opted for the third option, ordering Husband to "indemnify and hold Wife harmless from any debt associated with the marital residence." We recognize that neither Wife nor Husband is placed in an advantageous situation. However, as the trial judge aptly stated, "a divorce doesn't mean a fresh start." We cannot say that the trial court erred in its conclusion that Wife must remain a co-borrower on the mortgage due to the parties' financial constraints.

*Henegar v. Henegar*, No. M2015-01780-COA-R3-CV, 2016 WL 3675145, at *8 (Tenn. Ct. App. June 29, 2016).

Similarly, in the case at bar, the evidence preponderated in favor of the trial court's finding that Wife would be unable to refinance the mortgage on the marital residence in order to place the debt solely in her name due to her lack of employment history. This fact alone does not, however, render the trial court's distribution of marital property inequitable considering the parties' circumstances. Having thoroughly reviewed

11

the trial court's overall distribution of marital property in its entirety, we determine that the distribution was equitable, including the trial court's award of the marital residence to Wife. The trial court properly considered the factors contained in Tennessee Code Annotated § 36-4-121, and the court's findings were supported by a preponderance of the evidence.[1] We note that when a party to a divorce appeals the trial court's decision

---

[1] Tennessee Code Annotated § 36-4-121 provides in pertinent part:

(c)      In making equitable division of marital property, the court shall consider all relevant factors including:

     (1)      The duration of the marriage;

     (2)      The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

     (3)      The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

     (4)      The relative ability of each party for future acquisitions of capital assets and income;

     (5)(A)      The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

     (B)      For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

     (6)      The value of the separate property of each party;

     (7)      The estate of each party at the time of the marriage;

     (8)      The economic circumstances of each party at the time the division of property is to become effective;

     (9)      The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

     (10)      The amount of social security benefits available to each spouse; and

concerning a division of marital property and "wishes to focus on whether the division as to particular assets was equitable rather than whether the overall property distribution was equitable," this Court will "decline to do so as the goal is an overall equitable marital property distribution." *See Morton v. Morton*, 182 S.W.3d 821, 834 (Tenn. Ct. App. 2005) ("It is not the role of this Court to tweak a trial court's distribution of property."). We discern no error concerning the trial court's marital property distribution in this matter.

In accordance with this Court's opinion in *Henegar* and based on the trial court's allocation of the debt encumbering the marital residence to Wife, we conclude that this is a proper case in which to modify the trial court's Final Decree to add a provision stating that Wife will indemnify and hold Husband harmless from his obligation concerning the mortgage on the marital residence until such time as the debt is paid in full or Wife is able to refinance such debt in her sole name. *See Henegar*, 2016 WL 3675145, at *8. We determine such a provision to be necessary and equitable in this matter, as well as implicit in the trial court's distribution of marital property and debt.

## VI. Rehabilitative Alimony

Finally, Husband asserts that the trial court abused its discretion by awarding to Wife rehabilitative alimony in the amount of $4,000.00 per month for a period of four years.[2] Husband presents three bases for his contention that the amount of alimony awarded to Wife was erroneous: (1) Wife received a greater share of the marital estate, (2) Wife presented inadequate proof of her need and Husband's ability to pay the amount awarded, and (3) the trial court erroneously considered Husband's fault. We will address each of these arguments in turn.

Concerning the type and amount of an alimony award, Tennessee Code Annotated § 36-5-121 (2017) provides in pertinent part:

> (i)　In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

---

> (11)　Such other factors as are necessary to consider the equities between the parties.

[2] We note that Husband does not take issue with the type of alimony awarded; rather, he has solely questioned the amount of alimony awarded to Wife.

(1)    The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2)    The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3)    The duration of the marriage;

(4)    The age and mental condition of each party;

(5)    The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6)    The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7)    The separate assets of each party, both real and personal, tangible and intangible;

(8)    The provisions made with regard to the marital property, as defined in § 36-4-121;

(9)    The standard of living of the parties established during the marriage;

(10)    The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

In its Final Decree, the trial court thoroughly considered the above factors in light of the evidence presented at trial, making specific factual findings with regard to each one.

Husband contends that the trial court should not have awarded alimony in the amount of $4,000.00 per month to Wife because Wife received a greater share of the marital estate. In its marital property distribution, the trial court awarded to Husband assets valued at $36,520.00 while awarding to Wife assets valued at $50,600.00. Although Wife did receive a slightly greater share of the marital estate (58% of the total assets), the trial court expressly considered this allocation in its analysis of the statutory factors related to spousal support. The trial court ultimately determined, however, that the remaining alimony factors, most notably Husband's significantly greater earning capacity, weighed in favor of an award of rehabilitative alimony to Wife. We agree.

In addition to its specific factual findings regarding the above-listed factors, the trial court further explained the following concerning its decision to award rehabilitative alimony to Wife:

Husband has already paid for Wife's schooling. Even when Wife completes her training she will still have to obtain employment and that may take some time. Further, even after Wife becomes employed, the Court determines her salary will be significantly less than that of Husband's due to his experience. Wife is also the Primary Residential Parent (PRP) of two boys under 4 years of age.

Based on our review of the evidence presented in light of the applicable statutory factors, we conclude that the trial court's award of rehabilitative alimony to Wife in the amount of $4,000.00 per month was not erroneous simply because Wife received a slightly larger share of the marital estate. We further note that Wife's share of the marital estate primarily consisted of non-liquid assets, including the equity in the marital residence and her vehicle. By contrast, Husband's share of the marital estate contained over $25,000.00 in liquid assets. We determine that Husband's argument regarding the parties' respective shares of the marital estate and their effect on the court's alimony decision is unavailing.

15

Husband next contends that Wife presented inadequate proof of her need and Husband's ability to pay the amount of alimony awarded. Concerning this issue, the trial court specifically found:

Husband has $9,800.00 in take home pay a month and claims he needs $7,430.00 a month for his expenses. Wife claims she needs $4,277.00 a month for her expenses. Husband's counsel questioned Wife's hair salon expenses. Wife explained these were the same treatments she received during the marriage. The amount of alimony should be determined so that the party obtaining the divorce is not left in a worse financial situation than he/she had before the other party's misconduct brought about the divorce. *Broadbent v. Broadbent*, 211 S.W.3d 216, 222 (Tenn. 2006). The Court finds the hair care expense is reasonable.

Wife testified that [M.B.] will attend a private school for pre-kindergarten. Thus the disadvantaged spouse intends to spend $7,500.00 in private school tuition for a 4 year old to attend pre-K. According to the PPP that is Wife's sole decision. The Court finds that $7,500 for pre-K for one child while Wife will presumably be staying at home with the younger child is extravagant. While Wife has not included the tuition as part of her request for alimony, the Court wants to be clear that it is not including the tuition as part of the alimony. The reality is that two persons living separately incur more expenses than two persons living together. *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998). Thus the reality is it is unlikely the Parties will be able to maintain their pre-divorce lifestyle. *Id*. Both Parties need to learn to live on a budget.

The Court finds that Husband's expenses are not rationally based. For example, Husband claims he needs more money for expenses related to the Children than Wife does even though the PPP shows he only parents Children 80 days a year. Husband also seeks double the amount of food expense than Wife and a much greater recreation expense.

The Court finds Husband has take home pay of $9,800.00. He will pay $1,782.00 a month in child support. That leaves him a net of $8,018.00. His rent plus utilities is $1,620.00 a month leaving him a net of $6,398.00. Thus the Court determines that Husband has the ability to pay alimony. Wife must pay the mortgage of $1,785.00 plus utilities for a total of $2,222.00 plus her health insurance at $600 a month for a total of $2,822.00. Wife has no income so the Court determines the Wife needs alimony. Wife is receiving a greater asset allocation. The youngest child

16

will be in first grade in four years which is also half the duration of this marriage. From all of which the Court concludes that Wife is entitled to an award of rehabilitative alimony in the amount of $4,000.00 a month for a period of four years commencing upon this Order becoming final.

The evidence presented at trial supports the trial court's findings regarding Wife's need and Husband's ability to pay. Husband's income and expense statement demonstrated that Husband had a monthly net income of $9,800.00 while Wife had no income. At trial, Husband testified that his monthly rent was $1,420.00 and his utility expenses were approximately $70.00 per month. Husband listed other expenses for himself and the children on his statement, including $1,200.00 per month for food; $900.00 per month for clothing; and $900.00 per month for recreation. As the trial court observed, Husband's listed expenses appeared to be greatly inflated, especially when compared with those listed by Wife, even when considering that Wife's listed expenses, other than housing and utilities, were solely for herself and not the children.

Although Wife was attending classes in design and front-end programming at the time of trial, she did not expect to graduate for approximately ten months. Wife testified that she was unsure of what her expected salary would be following graduation because of her lack of work experience. Furthermore, as the trial court noted, Wife was designated the primary residential parent of the parties' children, who were only two and three years of age at the time of trial and thus would not be of school age for at least two to three more years. This fact could also impact Wife's employability during that timeframe or cause her to incur greater expenses for child care.

Based on the evidence presented, we conclude that the trial court did not err in its determination that Wife demonstrated a need for and Husband had the ability to pay an award of rehabilitative alimony in the amount of $4,000.00 per month for four years. As the trial court stated, Husband's net monthly income minus his child support, rent, and utility expenses would leave Husband with approximately $6,398.00 per month to cover other living expenses. Wife claimed a need for $4,277.00 per month without consideration of food, clothing, and other miscellaneous expenses for the children. As such, we determine that the trial court's award of $4,000.00 per month in rehabilitative alimony was supported by a preponderance of the evidence.

Husband further contends that the trial court erred by considering his marital fault in its analysis of the spousal support issue. Tennessee Code Annotated § 36-5-121(i)(11) instructs that the trial court may consider the "relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so" when making a determination regarding alimony. In this case, the trial court stated concerning this factor:

Husband admitted to four extra[-]marital affairs. The Court finds the Husband's infidelity caused the demise of the marriage. The Court deems it appropriate to consider fault in awarding alimony.

Although fault may properly be considered in the alimony analysis, alimony "is not and never has been intended by our legislature to be punitive." *See Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984). Need and ability to pay are "the most important considerations in determining spousal support." *See Gonsewski*, 350 S.W.3d at 110. Having concluded that the trial court properly analyzed Wife's need for alimony and Husband's ability to pay spousal support, we do not find the court's consideration of fault to be inappropriate. The court analyzed the proof regarding Husband's fault as merely one factor in its determination. We therefore conclude that the court's alimony decision was not punitive. *See Acosta v. Acosta*, 499 S.W.3d 785, 792 (Tenn. Ct. App. 2016), *perm. app. denied* (Tenn. Sept. 23, 2016) (determining that the lower court had not "placed such a heavy emphasis on Husband's fault that the judgment was thereby rendered punitive"). *See also Kanka v. Kanka*, No. M2016-01807-COA-R3-CV, 2018 WL 565841, at *7 (Tenn. Ct. App. Jan. 25, 2018).

Furthermore, having determined that the trial court properly analyzed the applicable statutory factors and the evidence presented at trial with regard to its award of rehabilitative alimony to Wife, we conclude that the trial court's award of $4,000.00 per month in rehabilitative alimony should be affirmed.

VII. Attorney's Fees on Appeal

Wife's sole issue concerns whether she should be granted an award of attorney's fees and expenses incurred on appeal. Wife contends that due to the significant income disparity existing between Husband's income and her own, she has no ability to pay the attorney's fees she has incurred in defending against Husband's appeal.

As this Court has previously elucidated:

Our supreme court has defined the factors that should be applied when considering a request for attorney fees incurred on appeal. These factors include the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered. *See Folk v. Folk*, 357 S.W.2d 828, 829 (Tenn. 1962).

*Stratienko v. Stratienko*, 529 S.W.3d 389, 413 (Tenn. Ct. App. 2017), *perm. app. denied* (Aug. 16, 2017) (quoting *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454, at *10 (Tenn. Ct. App. Sept. 3, 2003)).

In this matter, Wife was allocated few liquid assets in the trial court's equitable distribution of marital property, and she has no means of support other than the monthly payments of alimony and child support from Husband. Therefore, Wife has insufficient assets from which to pay the attorney's fees she has incurred in defending against Husband's appeal. We also note that although we have determined that a slight modification to the trial court's Final Decree is necessary and appropriate in this matter, Husband has not been successful regarding the substantive issues he raised on appeal. We therefore conclude that this is a proper action in which to award Wife her reasonable attorney's fees incurred on appeal. We remand this issue to the trial court for a determination of the appropriate amount of such award.

## VIII. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in its entirety, modifying the trial court's Final Decree to add a provision stating that Wife will indemnify and hold Husband harmless from his obligation concerning the mortgage on the marital residence until such time as the debt is paid in full or Wife is able to refinance such debt in her sole name. We also grant Wife's request for an award of attorney's fees incurred on appeal and remand this matter to the trial court for a determination of the appropriate amount of such award and for enforcement of the trial court's judgment. Costs on appeal are assessed against the appellant, Tyler Matthew Brown.

_____
THOMAS R. FRIERSON, II, JUDGE