IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 9, 2024 Session

**MARY RACHEL CAYSON v. PATRICK CAYSON**

**Appeal from the Chancery Court for Tipton County**
**No. 35605     Kasey Culbreath, Judge**
_____

**No. W2023-00943-COA-R3-CV**
_____

In this divorce, the husband claims the trial court erred in its classification of certain separate property and valuation of certain marital property. The trial court found that the equity held in the marital home attributable to the sale of property owned by the wife prior to the marriage had been transmuted into marital property, but then treated that property as separate despite its initial finding due to what it believed the wife's intent would have been under an alternative set of circumstances. The husband argues this was improper. The trial court also valued certain marital property, including the home and Wife's 401(k) retirement account, as of several years prior to the divorce proceedings. The trial court reasoned that the divorce proceedings had been delayed by the husband's criminal proceedings and subsequent incarceration arising from his theft of funds from the wife during the marriage. Husband filed this appeal. We reverse in part, vacate in part, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Vacated in Part, and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Jeff Mueller, Trenton, Tennessee, for the appellant, Patrick Cayson.

Lucie K. Brackin and S. Suzanne Brown, Memphis, Tennessee, for the appellee, Mary Rachel Cayson.

**OPINION**

**I. FACTS & PROCEDURAL HISTORY**

Mary Rachel Cayson ("Wife") and Patrick Cayson ("Husband") were married on May 30, 2015. The couple separated in November 2019 and a final decree of divorce was entered on May 30, 2023. At the time of the divorce proceedings, Wife was employed as a registered nurse and Husband was employed as a project manager for a concrete contractor. One child was born of the marriage in 2017 but tragically passed away two days after birth. It appears no other children were born to either party at the time of the divorce.

Wife's grandfather gave her certain shares of stock which the parties agree was her separate property. Sometime in 2017, Husband began selling shares of the stock without Wife's knowledge. Husband also took out credit cards with Wife listed as an authorized signer without her knowledge and accrued a large amount of debt. While the record is unclear as to when, at some point in 2019, Wife began receiving letters from the IRS. After she questioned Husband, he stated that he would contact the couple's CPA to resolve the issue. When more letters arrived, Wife contacted the CPA who indicated that he had not heard from Husband. Wife then had a finance manager at Raymond James review her accounts. The manager informed Wife that stock had been sold. She then confronted Husband about the theft. The date on which this occurred is not clear from the record, but it appears that the parties separated, and Husband was no longer living in the marital residence after Halloween of 2019. Wife filed for divorce on November 14, 2019, and criminal charges were also filed against Husband. On May 13, 2022, Husband pled guilty to theft of Wife's separate property in the amount of $394,659.28. At the sentencing hearing, Husband was ordered to pay Wife $344,659.28 in restitution and was sentenced to 8 years in prison.[1] Husband was to serve six months of incarceration and the remaining seven and one-half years on supervised probation. Husband was incarcerated from July 2022 to January 2023, while the divorce proceeding was pending. The parties' final divorce hearing took place on March 31, 2023.

There are two assets concerned in this appeal: the marital home and Wife's 401(k) retirement account. The couple's first home was located in Ripley, Tennessee, and was purchased by Wife's grandfather prior to the marriage. The deed held only the names of Wife and her grandfather as "tenants in common with rights of survivorship[.]" Wife's grandfather passed away prior to the marriage and upon his death Wife became the sole owner of the property. Husband testified that he lived in the home prior to the marriage, and Wife moved in after. The couple lived in the home together from 2015 until January 2018, when they purchased a home located at 54 Coffeetree Cove, Atoka, Tennessee, for $282,000. The Ripley home was sold for $175,729.04, and the proceeds were used toward the purchase, with the remainder being financed. They lived in the Atoka home together

---

[1] On the date of the sentencing hearing, Husband's father delivered a check to Wife in the amount of $50,000 as payment toward the restitution. Husband's father had previously paid $50,000 to pay off the credit card debt Husband incurred in the parties' names.

until their separation in late 2019. Husband attempted to enter into evidence an appraisal of the Atoka home performed just before the divorce proceedings began but the appraiser did not appear in court to establish the foundation of the document. After objection by Wife's counsel, the trial court refused its admission into evidence. However, the trial court did hear testimony regarding the value of the home and the contents of the appraisal from both Husband and Wife. Testimony from Husband indicated that the appraisal had valued the home at approximately $425,000. Husband and Wife each attributed the increase in value to the market conditions in Atoka.

Additionally, Wife began contributing to a 401(k) retirement account on October 30, 2015, shortly after the parties married. The value of the account at the time of the separation was $32,348.38, and the value at the time of the divorce proceedings was $62,797.84.[2] The only other marital assets discussed at the trial were items of personal property which the parties agreed to divide between themselves. The court approved that division. Additionally, the trial court determined that Husband's interest in certain real property owned by him and his father was separate property. In the final decree of divorce, the trial court granted Wife an absolute divorce on grounds of inappropriate marital conduct. The trial court ultimately determined that the $175,729.04[3] contributed to the purchase price of the Atoka home was marital property but treated it as separate property because it derived from the sale of the Ripley home gifted to Wife by her grandfather. The trial court valued the Atoka home at its purchase price of $282,000 rather than at a market price at the time of the proceedings. It valued Wife's 401(k) retirement account at $32,348.38, its value at the time of separation, rather than the value held at the time of the divorce proceedings. Husband then filed this appeal.

## II. Issue Presented

Husband presented one issue on appeal which we have reframed as two separate issues:

1. Whether the trial court erred when it categorized the $175,729.04 of equity held in the Atoka home attributable to the proceeds from the sale of the Ripley home as separate property of Wife despite holding that it had transmuted into marital property.
2. Whether the trial court erred when it assessed the value of the marital home at its 2018 purchase price and Wife's 401(k) retirement account at the time of separation rather than at the time of the divorce proceedings.

---

[2] The court found the value of the 401(k) retirement account to be $62,797.38 at the time of the divorce rather than that shown by the proof in the record, which is $62,797.84.

[3] The court found the value of Wife's contribution to the purchase price to be $175,729 rather than $175,729.04 as shown by the proof.

In addition to answering Husband's issues, Wife raised two separate issues on appeal, which we have slightly restated:

1. Whether Husband waived his argument on appeal by failing to include a table of the disputed assets pursuant to Rule 7 of the Tennessee Court of Appeals.
2. Whether Husband's appeal was filed solely for delay so as to justify an award of attorney's fees to Wife in this appeal.

For the following reasons, we reverse in part, vacate in part, and remand for further proceedings.

## III. Discussion

Here, the issues pertain to the classification and valuation of the Atoka home and the valuation of Wife's 401(k) retirement account. The classification of property as marital or separate and the valuation of marital property are questions of fact. *Hill v. Hill*, 682 S.W.3d 184, 196 (Tenn. Ct. App. 2023) (citing *Kinard v. Kinard*, 986 S.W. 2d 220, 231 (Tenn. Ct. App. 1998); *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 245 (Tenn. 2009)). Thus, these findings are reviewed *de novo* with a presumption of correctness and those findings will be upheld unless there is evidence which preponderates to the contrary pursuant to Tennessee Rule of Appellate Procedure 13(d). *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). We have previously stated when reviewing an equitable distribution of property that "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results from some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). While a trial court's findings of fact are granted deference, a "trial court's conclusions of law, however, are accorded no presumption of correctness." *Keyt*, 244 S.W.3d at 327 (citing *Langschmidt*, 81 S.W.3d at 744-45).

### A. Whether the trial court erred when it categorized the $175,729.04 of equity held in the Atoka home attributable to the proceeds from the sale of the Ripley home as separate property of Wife despite holding that it had transmuted into marital property.

Neither party challenged the trial court's initial finding that the equity in the Atoka home had transmuted into marital property. However, in order to fully analyze the court's ruling on the division of property, we first briefly examine the classification of property and concept of transmutation.

In Tennessee, an equitable property division begins with the "identification of all of the parties' property interests." *Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007). Once property is identified, "trial courts must first classify the parties' property as either separate or marital before equitably dividing the marital estate." *Wade v. Wade*, 897

S.W.2d 702, 713 (Tenn. Ct. App. 1994) (citing *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988)).  Marital and separate property are each defined in Tennessee Code Annotated section 36-4-121.  "Marital property" is defined in relevant part as:

> all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date. . . .

Tenn. Code Ann. § 36-4-121(b)(1)(A).[4]  "Separate property" is defined as:

> (A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986 (26 U.S.C.), as amended;
> (B) Property acquired in exchange for property acquired before the marriage;
> (C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);
> (D) Property acquired by a spouse at any time by gift, bequest, devise or descent;
> (E) Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and
> (F) Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Tenn. Code Ann. § 36-4-121(b)(2) (footnote omitted).

However, "separate property may be deemed marital by operation of law under theories of commingling or transmutation."  *Snodgrass*, 295 S.W.3d at 247 (citing *Langschmidt*, 81 S.W.3d at 747).  Transmutation of separate property into marital property "'occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property . . . .'" *Id.* at 256 (quoting *Langschmidt*, 81 S.W.3d at 747). Whether separate property has transmuted into marital property is a question of fact. *Lewis v. Lewis*, No. W2019-00542-COA-R3-CV, 2020 WL 4668091, at *2 (Tenn. Ct. App. Aug. 11, 2020) (citing *Luplow v. Luplow*, 450 S.W.3d 105, 114 (Tenn. Ct. App. 2014); *Fox v. Fox*, No. M2004-01616-COA-R3-CV, 2006 WL 1435407, at *3 (Tenn. Ct. App. Sept. 1,

---

[4] The Legislature amended this statute in 2022.  We cite to the version of the statute in effect when Wife filed the divorce complaint throughout this Opinion.

2006)).

The trial court initially determined that the proceeds from the sale of the Ripley home were Wife's separate funds, but that those funds had transmuted into marital property. The trial court stated:

6. The separate funds Wife contributed towards the purchase price of the marital home were transmuted into marital property. However, based upon the statutory provisions of TCA §36-4-121 [sic] the Court finds that Wife would not have transmuted her separate property into marital property had she known Husband was stealing from her.

7. As such, the Court finds that Wife should be and is hereby awarded $196,098.15 as an equitable division of the marital home — which consists of the $175,729 of separate funds Wife paid towards the purchase price of the marital home and the $20,969.15 in principal mortgage payments Wife solely made since the parties['] separation in November 2019.

Husband argues that the trial court properly determined that the home equity was transmuted into marital property but erred when it treated the proceeds as Wife's separate property despite that initial finding.

The trial court essentially attempted to reverse the transmutation of the home equity at issue. As stated above, transmutation is determined to have occurred when the court finds that the parties intended to treat what was once separate property as marital property. *Snodgrass*, 295 S.W.3d at 256 (citing *Langschmidt*, 81 S.W.3d at 747). Here, the trial court determined that the parties intended for the property to be marital, and thus ruled that the property transmuted. The trial court then stated that, had Wife known of Husband's theft, she "would not have transmuted her separate property into marital property" and went on to treat the property as separate for the purposes of division. Therefore, when performing the analysis, the trial court essentially substituted for Wife's actual intent what her intent would have been given an alternative set of circumstances.

We agree with the trial court's initial finding that what was once Wife's separate property was transmuted into marital property. We must now determine whether the trial court's decision to reverse the transmutation of the property based on its prediction of what Wife's intent regarding the property would have been under another set of circumstances is authorized by law. We find that it is not.

The trial court relied only on the terms of Tennessee Code Annotated section 36-4-121 to justify its decision. However, there is nothing in this statute which permits a trial court to discern what the intent of a party would have been under an alternative set of circumstances and substitute this predicted intent for the actual intent of the parties. There

is also nothing in that statute which allows a court to reverse the process of transmutation once it has been found to have occurred. *See* Tenn. Code Ann. § 36-4-121.

This case arises from an extreme set of circumstances. Husband pled guilty to the theft of $394,659.28 from Wife during the marriage. Husband was incarcerated for six months and ordered to pay restitution in the amount of $344,659.28 after remitting a check for $50,000 to Wife on the day of the sentencing hearing. The trial court stated that Husband's actions, had they been known to Wife at the time of transmutation, would have altered Wife's intent regarding the property. However, the transmutation analysis is predicated on the actual intent of the parties, not what the intent would have been under another set of circumstances.[5] The trial court does not provide any other reasoning to justify the finding that the funds converted from marital property back to the separate property of Wife. Additionally, we have found no case law or statutory law authorizing a trial court to substitute the actual intent of the parties with what the intent of the parties would have been under a different set of circumstances. Therefore, we find that the trial court erred when it treated the equity in the home as Wife's separate funds, despite finding that the funds had been transmuted into marital property.

Wife argues that even if the trial court erred when it treated the property as separate property, the error was harmless because there would be no difference in the distribution of property and that "the Trial Court's decision is supported by caselaw." Wife contends that the statutory factors contained in Tennessee Code Annotated section 36-4-121(c) would have justified a decision to award the full amount of this portion of the equity held in the home to Wife, even if the trial court had properly classified it as marital property. Wife points to the duration of the marriage and states that it supports the trial court's decision to not award Husband any portion of the proceeds of the Ripley home sale. However, the trial court did not address the duration of the marriage, or any of the other factors in section 36-4-121(c) in its decision.

Wife relies on our opinion in *Batson* which states that a trial court equitably divides property not by making a precisely equal distribution of property, "but rather by considering and weighing the most relevant factors in light of the unique facts of the case." *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). We also stated in *Batson* that when distributing property at the conclusion of a short-term marriage, a court should seek to place the parties back in the position that they would have been in if the marriage had never happened. *Batson*, 769 S.W.2d at 859. Wife argues that *Batson* shows that the

---

[5] Further, while it may be valid to presume that a person who was a victim of theft would immediately dissociate from the person committing the theft, it is impossible to know what would have actually happened. At the time of the sale of the Ripley home, the full extent of the theft had not yet occurred. It is possible that, had Wife learned of the theft at or around the time of the sale of the Ripley home, she could have forgiven Husband or found a path forward which did not result in the criminal charges and divorce. While this may be unlikely, it is impossible to know what the parties would have actually done.

trial court's present award accomplishes that goal and because Wife held the Ripley property prior to the marriage that she should exit the marriage with the proceeds from the sale of the property. However, as we recognized in *Batson*, "as a first order of business, it is incumbent on the trial court to classify the property, to give each party their separate property, and then to divide the marital property equitably." *Id.* at 856. Here, the trial court found the property to be marital but then treated it as separate for the purposes of property division. Additionally, in *Batson*, we emphasized the importance of the statutory factors in the division of marital property. *Id.* at 859. Wife's argument relies on the factor of duration, but Wife does not point to any findings made by the trial court that show any factors were considered.

Wife also argues that the facts of this case are similar to those we encountered in *Amos v. Amos*, No. M2009-00777-COA-R3-CV, 2010 WL 286768, at *4 (Tenn. Ct. App. Jan. 25, 2010). In *Amos*, the husband in a short-term marriage contributed $90,000 worth of funds earned prior to the marriage to the construction of what would serve as the couple's home. We held that the husband should have been awarded the value of that $90,000 as separate property, even though the wife had contributed approximately $56,000 of marital funds toward the construction costs of the home. *Id.* These contributions did not entitle the wife to the husband's separate property invested into the home. Although Husband argues that he contributed to the purchase of the home as a wage earner, Wife submits that in an equitable distribution, the trial court would still have awarded the value of the home's equity to Wife. However, it should be noted that in *Amos*, the assets contributed by the husband were determined to be his own separate assets whereas here the trial court found that Wife's separate property had transmuted into marital property. *Amos*, 2010 WL 286768 at *4.

Further, we cannot agree with Wife's contention that the error was harmless. In the context of an equitable distribution of marital property, harmless errors are those which do not require reversal or have no real effect on the equitability of a distribution when "considering the overall distribution of assets." *Watters v. Watters*, 959 S.W.3d 585, 589 (Tenn. Ct. App. 1997). In *Watters*, we found it to be harmless error where certain furniture was miscategorized as separate property of the wife rather than marital property. *Id.* However, that error was deemed to be harmless because the items were "clearly" to remain with the wife, and it did not affect the overall distribution. *Id.* Here, the value at stake is large. One-half of an award of $175,729.04 would be approximately $87,864.52. Even an award of less than one-half of that value could amount to several thousand dollars; thus, this error cannot be said to be small. Further, it is unclear whether the equity amount should remain with Wife according to a complete analysis of the required statutory factors. The remaining equity attributable to the mortgage principal payments made toward the Atoka home prior to the separation was divided between Husband and Wife, indicating that the trial court was prepared to split property which it determined to be marital property. Therefore, we cannot find this error to be harmless because the trial court could properly award a portion of the equity to Husband, and it could make a substantial difference to the

overall distribution of the marital estate.

In summary, the trial court erred when, after finding that transmutation had occurred, it reversed the transmutation process and treated the property as separate. No case law or statute authorizes a trial court to do so. Further, as explained, we cannot consider an error of this magnitude to be harmless due to the monetary value, and it is unclear whether the property should be fully awarded to Wife when treated as marital. Therefore, we reverse the trial court's treatment of the proceeds from the Ripley home as separate property. We also vacate the trial court's division of the marital estate and remand this case for the trial court to make an equitable distribution of the marital estate in which the equity held in the Atoka home attributable to the proceeds from the sale of the Ripley home is treated as marital property. In doing so, the trial court should consider the factors listed in Tennessee Code Annotated section 36-4-121(c).

### B. Whether the trial court erred when it assessed the value of the marital home at its 2018 purchase price and Wife's 401(k) retirement account at the time of the couple's separation rather than at the time of the 2023 divorce proceedings.

Next, Husband argues that the trial court erred when it valued the Atoka home at its 2018 purchase price and Wife's 401(k) retirement account at its value at the time of the couple's 2018 separation. Husband argues that both assets should have been valued closer to the date of the divorce proceedings. Tennessee law provides that, "[a]ll marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property." Tenn. Code Ann. § 36-4-121(b)(1)(A); *Hill*, 682 S.W.3d at 196. We consider both the Atoka home and Wife's retirement account in turn.

### 1. The Atoka Home

For the purposes of property division, the trial court valued the Atoka home at $282,000, which was the purchase price. The trial court stated that it used this value rather than a more current value of the home "because the case could not have been tried sooner during Husband's pending criminal action." The Court went on to explain that it "decline[d] to award Husband the increased value of the home since the parties' separation because the delay in trying this matter was due to his criminal action." Husband argues that this was improper as these actions were not authorized by the statute.

We have previously considered cases in which parties sought to have assets valued at a time other than that of the divorce proceedings. In *Preston*, we affirmed a trial court's decision to value marital property at the date on which the final divorce decree was entered rather than the date on which the marital assets were distributed despite "a material increase in the value of the marital assets in that interim period." *Preston v. Preston*, No. 03A01-9406-CV-00202, 1995 WL 10345 at *7 (Tenn. Ct. App. Jan. 11, 1995). There, we held

that the phrase "final divorce hearing date" referred to the date the final divorce decree was entered, rather than the later distribution date which the wife argued would constitute "the date the case is finally heard on all unresolved issues." *Id.* That decision was primarily predicated on the determination that any property acquired by either party after that date of the decree of divorce could not be properly classified as marital property and thus an increase in the value of the home after the divorce decree could not be marital property. *Id.* In our opinion in *Dunlap*, we relied on *Preston* and determined that a wife was not entitled to be paid an amount to compensate for an increased value of the parties' home when the distribution of the marital property did not occur until five years after the final divorce hearing date. *Dunlap v. Dunlap*, 996 S.W.2d 803, 817 (Tenn. Ct. App. 1998).[6]

In both *Dunlap* and *Preston,* a party sought the valuation of property at a date after the final decree of divorce so as to benefit from an increase in the property's value. Here, the trial court valued the property at a date several years prior to the final decree of divorce in order to deprive a party of a home's increased value. We find that the same principles apply, and that the mandatory language in the statute requires a trial court to value marital property at a time as close as possible to the divorce proceedings. In those cases, we declined to provide a spouse the benefit of additional appreciation in marital property after the parties were legally divorced. Here, we decline to deprive a party of the growth in a marital asset held up to the time of divorce. The home remained marital property until the legal conclusion of the parties' marriage when the final decree of divorce was entered. No authority has been cited which would authorize a trial court to value property at a date other than the date of the divorce. The statute uses mandatory language requiring the trial court to value the property as near as possible to the date of the divorce decree and does not include any exceptions.

Having determined that the trial court erred by valuing the Atoka home at the time of purchase, we must now determine whether enough evidence is contained within the record to enable us to assign a value to the property for the trial court to use upon remand in making its equitable distribution. Testimonial evidence was presented to establish the Atoka home's value at the time of the divorce proceedings. Husband did attempt to enter into evidence an appraisal done on the home in 2022. The appraiser was supposed to testify regarding his findings but failed to appear. Husband presented a copy of the appraisal, but the trial court did not accept it as evidence due to a lack of foundation. However, the parties testified extensively about the contents of the appraisal. When asked about the date listed on the appraisal, Wife agreed that it was dated May 19, 2022, several months prior to the March 2023 trial. Wife and Husband each acknowledged that the price listed on the appraisal was $425,000.00. Husband spent several years working in banking and stated that the market in the Atoka area had been very good in the years between the separation

---

[6] Both *Dunlap* and *Preston* were decided at a time where a prior version of Tennessee Code Annotated section 36-4-121 was in place. As such we referred to Tennessee Code Annotated section 36-4-121(b)(1)(A) in both of those cases.

and the divorce proceedings and attributed much of the growth in value to the market. When asked about whether the value had changed any in the months since the appraisal had been done, Husband stated, "[n]o. If anything, maybe it appreciated more." Wife acknowledged that the market had been good in the area and stated that any increases in value were attributable to the market in Atoka. When asked on cross-examination about the appraisal, Wife indicated that she did not have "any knowledge or any evidence" indicating that the appraisal was inaccurate and further testified in part:

Q Ms. Cayson, we previously discussed the appraisal. And I understand, I'm no expert, you know, you don't necessarily disagree with it. I get that part. I just want to make sure. You've seen this document; right?
A Yes, I have.
Q You understand this to be the appraisal that was submitted by Mr. Hoover, I think it is?
A Yes.
Q And do you have any objection to that? Is there something in there that you think is false information? Or ...
A No, sir.

The evidence indicates that the value of the home at the time of the divorce proceedings would have been $425,000. A witness is permitted to testify as "to the value of the witness's own property or services." Tennessee Rule of Evidence 701. We have previously affirmed a trial court which accepted lay opinions of the parties as the sole source of evidence as to the value of a marital home subject to an equitable distribution. *Brown v. Brown*, 577 S.W.3d 206, 214 (Tenn. Ct. App. 2018). Each of the parties in *Brown* relied on the prices of other homes in the same neighborhood as the marital home to form their opinions regarding the value of the home. *Id*. We determined in that case that the trial court's valuation of the marital home was supported by the evidence presented, and that the value was within the range of acceptable values since it fell in between the values submitted by the husband and the wife. *Id*. at 214-15. Similarly, here, the only evidence pertaining to the value of the Atoka home was the lay opinion of the parties. Each of the parties considered the appraisal in forming their opinion, even though the appraisal was not entered into evidence. Therefore, we hereby reverse the trial court's decision to value the Atoka home's value as that at the time of purchase. We remand this issue to the trial court to make an equitable distribution of the Atoka home using the $425,000 value of the home established by the evidence presented at trial.

## 2. The 401(k) Retirement Account

Husband also argues that the trial court erred when it valued Wife's 401(k) retirement account at the time of the separation rather than at the time of the proceedings. The trial court valued Wife's account at the date that the parties were separated, rather than at the date the final order was entered. In its findings of fact, the trial court stated that the

value at the time of the proceedings was $62,797.38 and that the value of the account at the time of separation was $32,348.38. The trial court stated that it would be dividing the value of the 401(k) retirement account using the value at the time of the separation, "[d]ue to the delay in this matter because of Husband's criminal actions[.]"

Wife argues that the trial court did not err in its timing of the valuations of both the home and the 401(k) retirement account. However, Wife does not seem to argue with any real ardor that the trial court was authorized to choose dates several years prior to the date of divorce at which to value the assets. Wife certainly did not provide any caselaw supporting that contention. Instead, Wife argues that even if the trial court did err by assessing the value of the assets at the date of separation rather than at the date of the divorce decree, Husband suffered no prejudice as the trial court would not have awarded the increase in property value even if the property had been valued at the later date. Wife's arguments again contemplate the statutory factors laid out in Tennessee Code Annotated section 36-4-121(c). Particularly, Wife argues that Husband dissipated $394,659.28 of Wife's separate assets prior to the divorce. However, the trial court made no finding regarding the dissipation of assets.

We have previously considered a case in which a trial court valued a party's retirement account at a time several years prior to the divorce proceedings. In *Hill*, the trial court assigned a value to a wife's retirement account "at the time of separation," but the final order regarding the disposition of marital property was not entered until twenty-two months after the divorce proceedings. *Hill v. Hill*, 682 S.W.3d 184, 202 (Tenn. Ct. App. 2023). The husband argued on appeal that the account should have been valued at the time of the entry of the decree rather than at the time of separation. *Id.* We agreed, explaining that marital property must be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property. *Id.* Thus, we found error where the trial court's order valued the wife's retirement account at a date approximately a year before the proceedings, and almost three years before the final order was entered. *Id.* We remanded that case for the trial court to hear evidence and make a finding on the retirement accounts as of a date as near as possible to the date the final order was entered. *Id.* Similarly, we find here that the trial court erred when it valued Wife's 401(k) retirement account at the time of the separation, rather than at the time of the final order. No authority has been provided which authorizes a Tennessee court to value marital property at an earlier date on the basis of delay in proceedings. We have also found none. Further, nothing in Tennessee Code Annotated section 36-4-121(b)(1)(A) authorizes these actions.

The concerns of Wife and the trial court appear to be that Husband's theft would lead to an inequitable distribution. While marital fault is not a factor to be considered in a property division, there are several equitable factors contained in Tennessee Code Annotated section 36-4-121(c) that may be used to ensure that a property distribution is equitable. A trial court is not authorized to value assets at different times in order to achieve an equitable result but is authorized to distribute property using its discretion to achieve an

equitable result.

The trial court made a finding regarding the value of the account at a time near the proceedings. The trial court stated in its findings of fact that the value of the 401(k) retirement account at the time of the divorce decree was $62,797.38. The evidence does not preponderate against this finding. The value of the account at the time of separation was determined to be $32,3458.38. The trial court awarded one-half of that value to Husband in the amount of $16,174.19. To justify this decision, the trial court referred only to the delay in the matter caused by Husband's criminal proceedings. Because Tennessee Code Annotated section 36-4-121(b)(1)(A) provides that the values of marital assets are to be determined as closely as possible to the time of the divorce proceedings, and because the trial court purposefully assessed the value of Wife's 401(k) retirement account at the time of the parties' separation, the trial court erred. Therefore, we hereby reverse the trial court's decision to value Wife's 401(k) retirement account at the time of the parties' separation.

Given our findings regarding valuation, we must vacate the court's division of marital property and remand this matter to the trial court so that it may make an equitable distribution of the parties' marital property using a $425,000.00 value for the Atoka home and a value of $62,797.38 for Wife's 401(k) retirement account. In performing this analysis, the trial court should consider the equitable factors listed in Tennessee Code Annotated section 36-4-121(c).

### C.  Whether Husband waived his argument on appeal by failing to include a table of the disputed assets pursuant to Court of Appeals Rule 7.

Wife argues that Husband waived his arguments on appeal by submitting his brief without a table contained in the body of the brief or an attached appendix setting out the assets disputed. We have often held that failure to include a table complying with Rule 7 of the Rules of the Tennessee Court of Appeals serves as waiver of "issues relating to the division of property in a divorce case." *Smith v. Smith*, No. E2017-00515-COA-R3-CV, 2017 WL 6467153, at *6 (Tenn. Ct. App. Dec. 18, 2017). *See e.g*, *Henry v. Henry*, No. M2019-01029-COA-R3-CV, 2020 WL 919248, at *3 (Tenn. Ct. App. Feb. 26, 2020); *Harden v. Harden*, No. M2009-01302-COA-R3-CV, 2010 WL 2612688, at *8 (Tenn. Ct. App. June 30, 2010). This rule provides that:

> (a) In any domestic relations appeal in which either party takes issue with the classification of property or debt or with the manner in which the trial court divided or allocated the marital property or debt, the brief of the party raising the issue shall contain, in the statement of facts or in an appendix, a table in a form substantially similar to the form attached hereto. This table shall list all property and debts considered by the trial court, including: (1) all separate property, (2) all marital property, and (3) all separate and marital debts.

(b) Each entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found and a citation to the record where the trial court's decision regarding the classification, valuation, division, or allocation of the property or debt can be found.

(c) If counsel disagrees with any entry in the opposing counsel's table, counsel must include in his or her brief, or in a reply brief if the issue was raised by opposing counsel after counsel filed his or her initial brief, a similar table containing counsel's version of the facts.

Rule 7 of the Rules of the Court of Appeals of Tennessee.

Here, Husband did not attach a table complying with Rule 7 to his brief. Wife pointed out in her brief that Husband failed to do so and argues that Husband thereby waived his claim. Husband sought permission to submit a table containing the information through the filing of a motion to amend the brief. We granted that motion on March 19, 2024. We hold discretion to review a party's appeal despite failure to include a table complying with Rule 7 when good cause is shown. *Smith*, 2017 WL 6467153 at *6. Given that Husband submitted a table later, we will consider Husband's arguments despite the initial failure to comply with the rules of this court.

### D. Whether Husband's appeal was filed solely for delay so as to justify an award of attorney's fees to Wife in this appeal.

Finally, Wife argues that Husband has only filed this appeal to delay the payment of the restitution owed from the criminal proceedings. Attorney's fees may be awarded when an appeal is frivolous or taken solely for delay. Tenn. Code Ann. § 27-1-122. An appeal may be deemed frivolous when it "is 'devoid of merit,' or one in which there is little prospect that it can ever succeed." *Indus. Dev. Bd. of City of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995) (quoting *Combustion Engineering, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978)). An appellate court holds discretion when determining whether an appeal is frivolous to justify an award of attorney's fees which is "exercised 'sparingly so as not to discourage legitimate appeals.'" *Eberbach v. Eberbach*, 535 S.W.3d 467, 475 (Tenn. 2017) (quoting *Whalum v. Marshall*, 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006)).

Given that we have reversed the trial court's decision regarding the classification of the property and the time at which the property was valued, this appeal was neither frivolous nor filed solely for delay. We therefore deny Wife's request for attorney's fees in this matter.

- 14 -

## IV. Conclusion

Having carefully reviewed the record and the issues raised by both parties, we reverse in part the ruling of the trial court, vacate the marital property division, and remand this matter for proceedings consistent with this opinion. Costs of this appeal are taxed to the appellee, Mary Rachel Cayson, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE