IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 4, 2025 Session

**KRISTEN ALICE ROWE v. CALVIN ALBERT ROWE, III**

**Appeal from the Circuit Court for Montgomery County**
**No. CC-22-CV-2064       Kathryn Olita, Judge**

_____

**No. M2024-00114-COA-R3-CV**
_____

Following a bench trial in this divorce action, the trial court granted a divorce to the wife on the ground of inappropriate marital conduct. The court entered a permanent parenting plan order, designating the wife as the primary residential parent to the parties' four minor children and granting the husband 144 days of annual residential co-parenting time. In what the court found to be an equitable division of the marital estate, it awarded to the wife $303,260.00 in marital assets, which included the equity in and possession of the marital residence and her marital share of the husband's military retirement. The husband received $274,097.10 in marital assets, which included the equity in and possession of an unimproved parcel of real property. The court directed that the wife would be responsible for the mortgage owed on the marital residence but also directed that the wife would not be required to refinance the mortgage debt until the youngest child had reached the age of eighteen years. Finding the wife to be the economically disadvantaged spouse and expressly finding that she was not voluntarily underemployed, the court awarded to her $5,000.00 monthly in transitional alimony for a period of six years, to be offset by her share of the husband's military retirement benefits upon his retirement. However, the court specified that "[t]he amount of $5,000.00 is a global amount which shall include the child support obligation owed by [the husband]." Based on the child support guidelines, the court ordered the husband to pay $1,992.00 monthly in child support. The court further awarded to the wife $10,127.00 in reasonable attorney's fees as alimony *in solido*. The husband has appealed. Discerning no reversible error, we affirm the trial court's judgment with the minor modification of an added provision stating that the wife will indemnify and hold the husband harmless for the mortgage debt on the marital residence until it is paid in full or refinanced. We also award to the wife her reasonable attorney's fees incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Mark R. Olson, Clarksville, Tennessee, for the appellant, Calvin Albert Rowe, III.

Steven C. Girsky, Clarksville, Tennessee, for the appellee, Kristen Alice Rowe.

**OPINION**

I. Factual and Procedural Background

The plaintiff, Kristen Alice Rowe ("Wife"), filed a complaint for divorce on October 18, 2022, in the Montgomery County Circuit Court ("trial court"). Wife alleged grounds for divorce against the defendant, Calvin Albert Rowe, III ("Husband"), of irreconcilable differences or, in the alternative, inappropriate marital conduct and adultery. According to Wife, the parties were married in July 2008 and separated in May 2022. Four children were born to the marriage: Aiden in June 2009, Caleb in February 2012, Owen in August 2015, and Bennett in August 2017 (collectively, "the Children"). At the time of the complaint's filing, the parties owned improved real property located in Montgomery County, Tennessee ("the Marital Residence"). Wife requested that she be granted "immediate sole temporary custody" of the Children and that upon a divorce judgment, she be granted primary custody with "reasonable parenting privileges" afforded to Husband. Wife also requested, as pertinent on appeal, an award of child support, an award of alimony, continued medical insurance coverage for the Children provided by Husband, an equitable distribution of the parties' assets and debts, and an award of reasonable attorney's fees and costs.

Husband filed an answer and counter-complaint on November 14, 2022, denying Wife's fault-based grounds for divorce. In his counter-complaint, Husband asserted divorce grounds of irreconcilable differences or, in the alternative, inappropriate marital conduct by Wife. Husband requested "joint residential care" of the Children and an award of spousal support. Husband subsequently filed a motion proposing a temporary parenting plan that would have provided Wife with 199 days of residential co-parenting time and Husband with 166 days annually. Although Husband's proposed plan named Wife as primary residential parent, he proposed that the parties have joint decision-making authority for all major decisions.

On November 30, 2022, Wife filed a response opposing Husband's proposed temporary parenting plan and proposing one of her own. In her response, Wife raised concerns about the possibility of Husband's leaving the Children with his mother ("Paternal Grandmother") unsupervised. Wife alleged that when the parties' youngest child was two years old, he had nearly drowned while in Paternal Grandmother's care when Paternal Grandmother had been too intoxicated to assist the Child. Wife averred that she

- 2 -

had arrived to find the child floating, lifeless, in a swimming pool and had rendered aid while Paternal Grandmother remained motionless.

As to Husband, Wife averred that because Husband had been an active duty member of the United States Army throughout the marriage, he was often gone for long stretches of time and had not always played an active role in the Children's lives. Wife further asserted that it was not in the best interest of the Children to spend additional time in Husband's care because he was "violent" and "often [had] angry outbursts directed toward [the Children]." Wife's proposed plan provided for the Children to spend 280 days with her annually and 85 days with Husband, setting Husband's co-parenting schedule on alternate weekends from Friday evening to Sunday evening. Wife also proposed that she be awarded sole major decision-making authority regarding the Children. Wife subsequently filed an answer to Husband's counter-complaint, denying any inappropriate marital conduct on her part and opposing Husband's requests to be designated the primary residential parent and to receive spousal support.

Following a hearing regarding the parties' proposed temporary parenting plans, the trial court entered an order on December 16, 2022, delineating a temporary co-parenting schedule. The court directed that Husband would have responsibility for the Children's care on alternate weekends, beginning on Thursday at 6:00 p.m. and ending on Sunday at 6:00 p.m. The court also set forth a holiday co-parenting schedule and directed that Paternal Grandmother was not to be left unsupervised with the Children for any reason. The court gave Wife the right of first refusal in the event that Husband had to be away from the Children for more than eight consecutive hours during his parenting time. A mediator's report filed in April 2023 reflected that the parties participated in mediation but did not resolve any issues.

On May 26, 2023, Husband filed a motion to amend the temporary parenting plan, asserting that he needed more time with the Children and that Wife had been unaccommodating regarding his requests for extra time. Husband further urged that a co-parenting schedule for the 2023 holidays needed to be established. He attached a proposed temporary parenting plan wherein Wife would enjoy 224 days annually with the Children and he would enjoy 141 days. He again proposed joint decision-making authority. On June 7, 2023, Wife filed a motion to appoint a guardian *ad litem* ("GAL") to represent the best interest of the Children. Wife concomitantly filed a response opposing Husband's motion to amend the temporary parenting plan. Wife attached examples of text messages between the parties purportedly demonstrating that they had been cooperating well when Husband requested extra time with the Children or needed to adjust his schedule. On August 15, 2023, the trial court entered an order appointing attorney Amy Bates as the GAL pursuant to Tennessee Supreme Court Rule 40A.

On October 20, 2023, Wife filed a motion requesting leave from the trial court to file an amended complaint for legal separation due to a recently discovered need for

ongoing medical care and continued health insurance coverage through Husband. The trial court entered an order granting leave for Wife to file an amended complaint on November 9, 2023.

Prior to trial, each party filed a pretrial brief and a proposed permanent parenting plan. Under Husband's proposed plan, the parties would both be designated as primary residential parents sharing equal residential co-parenting time and joint major decision-making authority. Husband proposed that the Children spend alternating weeks with each parent throughout the year. Wife proposed a schedule wherein she would enjoy 256 days of annual co-parenting time while Husband would enjoy 109 days, and Wife would have sole major decision-making authority. Wife desired to keep Husband's co-parenting time on alternate weekends as it had been during the pendency of the divorce. Wife also proposed that the provisions included in the temporary parenting plan regarding Paternal Grandmother's need for supervision and Wife's right of first refusal be memorialized.

The trial court conducted a bench trial on November 20, 2023, during which the parties were the sole witnesses. During her testimony, Wife presented an income and expense statement reflecting a monthly gross income from her employment of $500.00 and monthly expenses (including the mortgage related to the Marital Residence) in the amount of $6,827.61, yielding a claimed deficit of $6,327.00. Wife testified that she was employed by a non-profit company that paid her for work that she could perform from home. She explained that she had experienced difficulty in finding employment because she had been a stay-at-home parent during the marriage who was responsible for most of the Children's care. Wife included that Husband had served in the miliary during the entirety of the marriage and was often away from home for long periods of time, leaving her solely responsible for the care of the Children, one of whom had been medically fragile as an infant.

Husband presented his military pay records, which support the trial court's finding that his gross income at the time of trial was approximately $12,025.84 monthly. Husband also presented a proposed division of assets and liabilities wherein he suggested that Wife be granted sole ownership of the Marital Residence and that he be granted ownership of the parties' parcel of unimproved real property. With respect to the marital residence, Husband specified that he wanted Wife to retain the equity and be responsible for the mortgage, stating, "I'm perfectly fine if . . . the loan stays in my name for interest."

The GAL also provided a statement at the close of trial. In relevant part, the GAL stated that although it was clear that Wife had been the Children's primary caregiver throughout the marriage, Husband was at a point in his military career when he could devote more time to the Children and should be afforded an opportunity to enjoy more residential co-parenting time than he had previously been given. The GAL emphasized that both parents loved the Children and were responsible, attentive parents. The GAL acknowledged a recent incident to which Wife had testified when Husband had slapped the

- 4 -

eldest child (age fourteen at the time of trial) at the dinner table. Husband testified that this was an isolated incident and not the way he typically disciplined the Children. The GAL stated that the eldest child was now feeling as though he had a good relationship with Husband but was afraid that if he spent more time with his father, the relationship would change somehow. However, the GAL articulated: "I don't know that I've seen anything that would make me think that that would happen."

The trial court entered a final decree of divorce and permanent parenting plan order ("PPP") on January 4, 2024. The court granted Wife's complaint for divorce on the ground of Husband's inappropriate marital conduct. Regarding Husband's conduct, the court found:

> [Wife] presented testimony and evidence regarding [Husband's] inappropriate relationship outside the marriage, [Husband's] inappropriate conduct with [Wife], and [Husband's] questionable treatment of the children, including disciplining in anger, and intentionally slamming car brakes causing [a] child's face to crash into the dash/vent.
>
> [Wife] testified that the "final straw" in the marriage took place when [Husband] slapped one of the children in the head at the dinner table. This event took place after other events previous thereto from [Husband] towards the children[:] spanking Owen in anger, and backing a child into a wall in an intimidating and angry manner.
>
> The Court finds [Wife's] testimony and exhibits[1] to be credible and therefore, by preponderance of the evidence, an award of Divorce is awarded to [Wife] on the grounds of inappropriate marital conduct.

(Paragraph numbering omitted.)

The trial court then considered the facts presented in light of the statutory factors concerning custody and co-parenting. In doing so, the court declined to adopt either party's proposed parenting plan in full. Although the parties were afforded joint decision-making authority, the court designated Wife as the primary residential parent with 221 days of annual co-parenting time compared to Husband's 144 days. For Husband's parenting time, the court maintained the existing schedule of alternate Thursday through Sunday evenings during the academic year. However, the court adopted a "week on/week off parenting schedule during the children's summer vacation with exchanges taking place on Sunday at 6:00 p.m." The court also included the following special provisions in the PPP:

---

[1] Wife presented photographs of two of the parties' children, which showed some amount of redness on one child's face and redness on another child's side. Wife testified that Husband's actions caused the redness shown in the photographs.

- 5 -

1. [Paternal Grandmother] is to not be unsupervised with the minor children for any reason.

2. If [Husband] will be gone for longer than twenty four (24) hours due to educational or military training purposes, the children shall be in the care of [Wife].

3. The family shall attend family counseling together, with the [eldest] minor child, Aiden, receiving individual counseling as well.

In making its custody determination, the trial court addressed the statutory best interest factors provided in Tennessee Code Annotated § 36-6-106(a) and found that the applicable factors favored either Wife or both parties equally. The court also rendered the following findings of fact in support of the PPP:

Before the Court addressed the custody determination, the Court reiterated the importance of consistency in the minor children's lives and noted that a balance must be achieved to account for stability and consistency while also allowing for the children to improve their relationship with [Husband].

The Court finds that the children find stability and consistency with [Wife] and it is therefore in the children's best interest for [Wife] to be awarded Primary Residential Parent.

Though the Court does not adopt either part[y's] Proposed Parenting Plan, the Court finds that the parties shall continue exercising the school time schedule they have been exercising per the Temporary Parenting Plan. However, during the children's summer break, the parties shall exercise a week on/week off visitation schedule.

The Court finds that this will provide the children with consistency and stability and, due to the fact that [Husband] often pulls the children out of school early on his scheduled visitation days, this is in the best interest of the children.

The Court further finds that [Wife] has always been extremely invested in the schooling and education of the children and this will enable her to remain so by continuing to provide them with structure and stability.

(Paragraph numbering omitted.)

In its final decree, the trial court set forth what it found to be an equitable distribution of the marital estate. Overall, the court awarded to Wife $303,260.00 in marital assets while awarding to Husband $274,097.10 in marital assets. The court also awarded to Wife her marital share of the husband's military retirement while noting that Husband had been in the military for the entire duration of the marriage. The court awarded the Marital Residence to Wife and the parties' parcel of unimproved real property to Husband. The court directed that Wife would be responsible for paying the mortgage debt related to the Marital Residence from her own funds. However, the court directed that Wife "will not be required to refinance the home in her own name until all of the children reach the age of eighteen."

As to spousal support, the trial court awarded to Wife transitional alimony in the amount of $5,000.00 per month for a period of six years, noting that when Husband retires from the military, the amount of transitional alimony "would be offset by the amount of retirement to be received by Wife." However, the court specified that the $5,000.00 would be "a global amount that shall include [Husband's] monthly child support obligation." Pursuant to the child support guidelines, Husband's monthly child support obligation was set at $1,992.00. Therefore, the transitional alimony award amounted to $3,008.00 per month.[2] The court also awarded to Wife $350.00 monthly to cover her health insurance, to be terminated upon her obtaining employment in the future that offers health insurance.

In making its alimony determination, the trial court referenced the statutory factors provided in Tennessee Code Annotated § 36-5-121(i) and stated the following:

> The Court further took into account the major factors in Tennessee Code Annotated § 36-5-121(i), and finds that the Husband's significantly greater earning capacity, additional resources available to him, and his education level, which was made possible by the fact that [Wife] stayed at home with the children, has resulted in [Wife's] requiring time to secure and improve her earning capacity to a reasonable level to support herself and four (4) children.

> The Court finds the most notable factor in Tennessee Code Annotated § 36-5-121(i), to be Factor six (6), which is the extent to which it would be undesirable for a party to seek employment outside of the home because such party will be custodian of the children. The Court finds that [Wife] is serving as primary residential parent, while also engaging in a work from home job. Though [Husband] is critical of her present earnings, the Court finds that

---

[2] *See, e.g.*, *Jones v. Jones*, No. E2019-00037-COA-R3-CV, 2019 WL 5692293, at *6 (Tenn. Ct. App. Nov. 4, 2019) (concluding that a provision in the parties' marital dissolution agreement that a total amount of funds would represent "both [the husband's] alimony and child support obligations" was permissible because "neither the child support award nor the alimony award was 'capped,' and either award could be modified upon a proper showing").

[Husband's] own testimony reflects the acknowledgement that someone will need to be more available to the children. Therefore, the Court noted that "you can't criticize someone for accommodating children's schedules and staying out of the workforce for almost 15 years, while also recognizing that these children need care."

Accordingly, the previously outlined marital asset division and transitional alimony award is appropriate in this case due to the fact [Wife] is considerably economically disadvantaged in comparison to [Husband] and is in need of financial assistance in adjusting to the economic consequences of the divorce.

Based on [Wife's] Income and Expense Statement, which the Court finds to be reasonable and appropriate, the Court finds that the amount of $5,000.00 is just enough to cover [Wife's] monthly expenses and [Husband] is capable of paying that amount.

(Paragraph numbering omitted.)

Additionally, the trial court expressly found that Wife was not voluntarily underemployed, stating the following in its findings of fact:

The Court finds that [Wife] is not voluntarily underemployed pursuant to the regulations with the most significant reason being that [Wife] was in seven (7) duty stations for the past eleven (11) years for the benefit of [Husband's] career. She has been out of the work force raising four children.

[Wife's] employment history includes being a childcare provider for five (5) months, employment with the Family Readiness Group for three (3) months, and employment as a medical support person for three (3) months. However, the Court notes that [Wife] has worked as a stay at home Mother for many years.

Accordingly, the Court finds that [Wife] is at a significant disadvantage in earning potential and potential employment, despite her degree, by virtue of being out of the workforce. Additionally, even after [Wife] obtains work, she will have to account for childcare expenses and time off from work to care for the children.

For the foregoing reasons, the Court finds that [Wife] is not willfully or voluntarily underemployed.

(Paragraph numbering omitted.)

Prior to entry of the final decree, Wife's counsel filed an affidavit of reasonable attorney's fees. In the final decree, the court awarded to Wife $10,127.00 in attorney's fees as alimony *in solido*, reiterating that Wife was "the economically disadvantaged spouse." Husband timely appealed.

## II. Issues Presented

Husband presents the following issues for this Court's review, which we have restated slightly:

1.     Whether the trial court abused its discretion by entering a PPP that provided Husband with less than fifty percent residential co-parenting time.

2.     Whether the trial court erred in awarding to Wife attorney's fees as alimony *in solido*.

3.     Whether the trial court erred in setting a six-year time period for the award to Wife of transitional alimony.

4.     Whether the trial court erred by declining to set a date earlier than the youngest child's eighteenth birthday by which Wife must refinance the debt on the marital residence.

5.     Whether the trial court erred by requiring that Paternal Grandmother be supervised when with the Children.

Wife presents the following additional issue:

6.     Whether Wife should be awarded her reasonable attorney's fees on appeal.

## III. Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). In addition, the trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v.*

- 9 -

*Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

This Court reviews a trial court's determination of an appropriate permanent parenting plan order according to an abuse of discretion standard. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014). As our Supreme Court stated in *Kelly*:

> Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Armbrister v. Armbrister*, 414 S.W.3d [685,] 693 [(Tenn. 2013)]. Determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge." *Armbrister v. Armbrister*, 414 S.W.3d at 693 (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Armbrister v. Armbrister*, 414 S.W.3d at 693 (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)).
>
> . . . A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Armbrister v. Armbrister*, 414 S.W.3d at 693 (quoting *Eldridge v. Eldridge*, 42 S.W.3d at 88).

*Id.* at 692.

Similarly, regarding awards of spousal support, our Supreme Court has "repeatedly . . . observ[ed] that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). The Court has further explained:

> [A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew* [*v. Burlew*], 40 S.W.3d [465,] 470 [(Tenn. 2004)]; *Robertson v. Robertson*, 76 S.W.3d 337, 340-41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006).

Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

*Id.* at 105-06 (footnotes omitted).

This Court also reviews a trial court's decision concerning attorney's fees in a divorce action pursuant to an abuse of discretion standard. As this Court has stated:

Our review of an award of attorney's fees is guided by the principle that "'the allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion.'" *Mimms v. Mimms*, 234 S.W.3d 634, 641 (Tenn. Ct. App. 2007) (quoting *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005)).

*Hernandez v. Hernandez*, No. E2012-02056-COA-R3-CV, 2013 WL 5436752, at *8 (Tenn. Ct. App. Sept. 27, 2013).

IV. Permanent Parenting Plan Issues

A. Co-Parenting Schedule

Husband posits that the trial court erred by failing to maximize his time with the Children when the court fashioned the parties' PPP. In support, Husband relies upon the statute governing parenting and custody decisions, Tennessee Code Annotated § 36-6-106(a), which states that "the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child[ren.]" Husband

thus asserts that the trial court should have adopted an alternating-week, 50/50 co-parenting schedule in order to maximize his participation in the Children's lives.[3]

The full text of Tennessee Code Annotated § 36-6-106(a) (West March 18, 2022, to April 23, 2024), as it existed at the time this divorce action was filed, provides:

In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors. The court shall consider all relevant factors, including the following, where applicable:

(1)     The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2)     Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3)     Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4)     The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

---

[3] Husband did not raise an issue regarding the trial court's designation of Wife as primary residential parent.

(5)    The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6)    The love, affection, and emotional ties existing between each parent and the child;

(7)    The emotional needs and developmental level of the child;

(8)    The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. . . .

(9)    The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10)    The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11)    Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12)    The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13)    The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14)    Each parent's employment schedule, and the court may make accommodations consistent with those schedules;

(15)    Any other factors deemed relevant by the court; and

(16)    Whether a parent has failed to pay court-ordered child support for a period of three (3) years or more.

Husband asserts that the trial court erred in its analysis of and weight given to the applicable statutory factors. By contrast, Wife contends that the trial court appropriately

analyzed and weighed the relevant factors, and she urges that this Court should not "tweak" the trial court's co-parenting schedule pursuant to the abuse of discretion standard of review. Upon our thorough review of the facts and the applicable statutory factors, we agree with Wife.

The trial court, in its final order, made significant factual findings related to the statutory factors that the court found relevant. For example, with reference to the first factor, the trial court noted that Wife had been the primary caregiver for the Children throughout their lives and had "performed the majority of parenting responsibilities." The evidence supports this finding. Wife had primarily been a stay-at-home mother during the marriage and had performed the lion's share of parental responsibilities with respect to the Children's daily needs while Husband was working, training, or sometimes deployed for long stretches of time. Therefore, as the trial court correctly noted, the Children were largely dependent on Wife for their emotional and developmental needs.

The trial court also found that although the Children's relationship with Husband had been improving, there had been "events that have occurred that have caused a distance between them." The evidence also supports this finding. Wife presented evidence that the Children had reported fear of Husband due to his anger and harsh discipline in the past but that this had improved somewhat since the parties' separation because Husband had been able to spend weekends with the Children without the presence of tension and conflict with Wife. The trial court determined that overall, the first factor favored Wife. The evidence supports this determination.

Regarding factor two, the trial court determined that this factor weighed equally between the parties. The court found that each parent had tried to encourage the Children's respective relationships with the other parent. The court further found that despite Husband's "immature parenting choices," his relationship with the Children was improving. The evidence at trial demonstrated that the parties had worked well together during the *pendente lite* co-parenting with Wife accommodating Husband's requests for additional time when she could. The parties shared in the responsibilities of transporting the Children to and from school and their extra-curricular activities, and each parent had manifested willingness to adjust his or her schedule in order to facilitate the Children's needs. Accordingly, this factor does appear to weigh equally in favor of Wife and Husband.

Factor three concerns whether either parent had refused to attend a court-ordered seminar. Because no evidence of this was presented at trial, we agree with the trial court that this factor weighs equally or is neutral in this case. With respect to factor four, the court found that the parties were equally able to provide the Children with food, clothing, medical and other care and meet their educational needs. Based on the evidence presented, we agree that this factor weighs evenly.

The trial court found that factor five weighed in Wife's favor, respecting the degree to which she had been primary caregiver and had taken on a greater responsibility for parenting the Children. The evidence supports the trial court's determination concerning this factor. Wife testified and Husband did not dispute that she had been the primary caregiver for the Children during the marriage. Although Husband had been involved to some degree, the proof was clear that Wife had performed the majority of daily responsibilities with regard to the Children, including her provision of round-the-clock care for one child who was medically fragile in his younger years.

Respecting factors six, seven, and eight, the trial court found that these factors weighed equally in the analysis because the evidence established that (1) both parents clearly loved the Children, (2) both parents were capable of addressing the Children's emotional and developmental needs, and (3) both parents had demonstrated fitness to parent. Upon our thorough review of the evidence, we agree that these factors should weigh equally. Although the court found factor nine—the child's interaction with others and involvement with school and other activities—to be inapplicable, we find that it is applicable but should weigh evenly here because both parents had demonstrated a concern for encouraging the Children's educational and extracurricular pursuits and neither parent had discouraged the Children's relationships with other relatives.

Factor ten concerns continuity and the length of time the Children have lived in a stable and satisfactory environment. The trial court determined that this factor weighed in Wife's favor, and we agree with that determination. The evidence clearly demonstrated that Wife had been the Children's primary caregiver and a stabilizing force in their lives while Husband's employment often required that he be absent from the home for long periods of time. We also agree with the trial court's determination that factors eleven and twelve are inapplicable here.

The trial court found that factor thirteen, regarding a child's preference, should weigh equally. We note that the Children did not testify and that little evidence was presented regarding their preferences. Accordingly, the trial court did not err in finding that this factor weighed equally or was neutral. With respect to factor fourteen and the parents' employment schedules, by the time of trial, Wife was working a part-time schedule from home, which allowed her a great deal of flexibility in attending to the Children's needs. Husband also maintained some flexibility in his schedule but worked more hours than Wife. We therefore agree with the trial court that this factor favored Wife. The court found the remaining factors to be inapplicable.

Viewing the weight of the evidence and the applicable statutory factors, although several of the factors weighed equally in this matter, there were certain factors that weighed heavily in Wife's favor by reason of Wife's performance of a substantial share of the parenting responsibilities for the Children throughout their lives. Wife presented evidence that for the majority of the Children's lives, she had been the primary parent who provided

- 15 -

for the Children's daily needs, such as food, clothing, transportation, education, medical care, and emotional support. Although Husband had been involved with the Children, he had also served in the military throughout the marriage, an occupation that had placed enormous demands upon his time. Husband clearly loves the Children, and the parties had co-parented well together pending trial. However, we agree with the trial court that the evidence favored Wife, who during the marriage had performed most of the parenting responsibilities and had provided continuity and security for the Children.

Husband urges this Court to vacate the trial court's co-parenting schedule and instead adopt an equal, week-on/week-off schedule based on the evidence demonstrating, *inter alia*, his involvement with the Children and the GAL's suggestion that he be granted more co-parenting time. However, we determine that the trial court properly considered and appropriately weighed the evidence presented in relation to the statutory factors. The trial court did grant Husband more co-parenting time than what he had received prior to trial by instituting an alternating-week schedule during the summer instead of alternate weekends.

As this Court has previously recognized, "crafting a specific parenting schedule remains within the discretion of the trial court," and the trial court is not required to "establish a parenting schedule that provides equal parenting time" to each parent. *See Gooding v. Gooding*, 477 S.W.3d 774, 784 n.7 (Tenn. Ct. App. 2015). Indeed, the legislature has made clear that the statutory scheme concerning parenting plans establishes "neither a preference nor a presumption for or against joint legal custody, joint physical custody, or sole custody . . . but the court shall have the widest discretion to order a custody arrangement that is in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(A)(1) (West July 1, 2021, to current).

Moreover, we reiterate that it is not this Court's province to "tweak" a trial court's co-parenting schedule with the hope of achieving a better result. *See Kelly*, 445 S.W.3d at 692. Instead, this Court should uphold the trial court's parenting plan unless "the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *See id.* In this case, the trial court's factual findings are supported by the evidence, and its analysis of the statutory factors in relation to the facts found is appropriate. We therefore affirm the trial court's co-parenting schedule set forth in the PPP.

### B. Restrictions Concerning Paternal Grandmother

Husband's second issue related to the PPP concerns the PPP's provision stating that his mother shall not be allowed to "be unsupervised with the minor children for any reason." Husband argues that the trial court failed to provide a reason for this directive in the final order. We note, however, that Wife testified during trial regarding an incident that occurred when the youngest child was two years old. Wife recounted an incident when

Paternal Grandmother had allowed the youngest child to nearly drown in a swimming pool while in Paternal Grandmother's care. Wife first documented this incident in her response to Husband's motion for temporary parenting plan, filed in November 2022, wherein Wife stated:

> [Paternal Grandmother] often drinks in excess and once let one of the minor children drown in a swimming pool while she was intoxicated and swimming with the minor children. [Paternal Grandmother] was too intoxicated to render aid to the minor child and instead, the Mother found the child floating in the pool and subsequently rendered aid. Not only was [Paternal Grandmother] too intoxicated to help in this situation, she was too inebriated to move as she only sat and watched the entire traumatic and dangerous situation unfold.

Accordingly, Wife sought a provision in the temporary parenting plan stating that Paternal Grandmother could not be left unsupervised while in the presence of the Children. When the trial court subsequently entered an order concerning *pendente lite* visitation, the court granted Wife's request by including a provision directing that Paternal Grandmother must be supervised while with the Children.

At trial, Wife testified regarding the near-drowning incident and explained that her concerns about Paternal Grandmother's supervision remained even though the youngest child was six years of age by the time of trial. Husband did not dispute Wife's testimony, and the trial court clearly credited it when the court included in the PPP the provision directing that Paternal Grandmother's interactions with the Children be supervised. We therefore conclude that this provision had a valid basis and was supported by the evidence adduced during trial. We find Husband's postulate concerning this provision unavailing.

### V. Propriety of Alimony Award

### A. Length of Transitional Alimony Award

Husband next takes issue with the length of the trial court's award of transitional alimony to Wife. Husband argues that the trial court improperly evaluated the statutory alimony factors and failed to provide a basis for its award. He urges that the length of the six-year award was excessive.

Tennessee's statutory scheme recognizes four types of spousal support: (1) alimony *in futuro*, also known as periodic alimony; (2) alimony *in solido*, also known as lump-sum alimony; (3) rehabilitative alimony; and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d) (West March 31, 2022, to current); *Mayfield v. Mayfield*, 395 S.W.3d 108, 115 (Tenn. 2012). The statute indicates a legislative preference favoring short-term spousal support, rehabilitative and transitional alimony, over the long-term types of support,

- 17 -

alimony *in futuro* and alimony *in solido*. *See* Tenn. Code Ann. § 36-5-121(d)(2)-(3); *Mayfield*, 395 S.W.3d at 115; *Riggs v. Riggs*, 250 S.W.3d 453, 456 (Tenn. Ct. App. 2007). Rehabilitative alimony "'is designed to increase an economically disadvantaged spouse's *capacity* for self-sufficiency.'" *See Mayfield*, 395 S.W.3d at 115 (quoting *Gonsewski*, 350 S.W.3d at 109). By contrast, transitional alimony, awarded by the trial court in this matter, "is appropriate when a court finds that rehabilitation is not required but that the economically disadvantaged spouse needs financial assistance in adjusting to the economic consequences of the divorce." *See Gonsewski*, 350 S.W.3d at 109 (citing Tenn. Code Ann. § 36-5-121(d)(4), (g)(1); *Riggs*, 250 S.W.3d at 456 n.5).

Tennessee Code Annotated § 36-5-121(i) (West March 31, 2022, to current) provides the following factors to be considered, as relevant, when determining whether an award of spousal support is appropriate, and if so, "the nature, amount, length of term, and manner of payment" to be awarded:

(1)     The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2)     The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3)     The duration of the marriage;

(4)     The age and mental condition of each party;

(5)     The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6)     The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7)     The separate assets of each party, both real and personal, tangible and intangible;

(8)     The provisions made with regard to the marital property, as defined in § 36-4-121;

(9)     The standard of living of the parties established during the marriage;

- 18 -

(10)  The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11)  The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12)  Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

As our Supreme Court has elucidated, "[a]lthough each of these factors must be considered when relevant to the parties' circumstances, 'the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay.'" *Gonsewski*, 350 S.W.3d at 110 (quoting *Riggs*, 250 S.W.3d at 457). Moreover, this Court has confirmed that when "considering these two factors, the primary consideration is the disadvantaged spouse's need." *Murdock v. Murdock*, No. W2019-00979-COA-R3-CV, 2022 WL 611024, at *14 (Tenn. Ct. App. Mar. 2, 2022). It is well settled that "trial courts in Tennessee have broad discretion to determine whether spousal support is needed and, if so, to determine the nature, amount, and duration of the award." *Mayfield*, 395 S.W.3d at 114; *see also Fickle v. Fickle*, 287 S.W.3d 723, 736 (Tenn. Ct. App. 2008).

Here, the trial court made the following specific findings of fact and conclusions of law concerning Wife's request for spousal support:

> In consideration of the testimony and evidence and the factors included in Tennessee Code Annotated § 36-5-121 (c), the Trial Court found that the parties have been married for fifteen (15) years, the parties worked together to achieve their marital assets, both parties are physically and mentally fit, and neither party has health issues that would hinder employment. The Court further finds that each contributed to the preservation and appreciation of each asset and neither testified to any tax consequences.
>
> The Court further finds that because [Wife] stayed at home with the children, [Husband] was able to maximize his training and education opportunities, which lends to the fact that [Husband] has a much greater earning capacity than that of [Wife]. Therefore, [Wife] is the economically disadvantaged spouse. This accounts for why [Wife] is receiving a slightly larger portion of the marital assets.
>
> Therefore, an award of transitional alimony in the amount of $5,000.00 is appropriate in this case. The amount of $5,000.00 is a global

amount which shall include the child support obligation owed by [Husband]. When [Husband] retires from the United States Military, this amount shall be offset by the amount of retirement to be received by [Wife].

[Wife] will receive the transitional alimony/support in the amount of $5,000.00 for a period of six (6) years.

* * *

The Court further took into account the major factors in Tennessee Code Annotated § 36-5-121(i), and finds that the Husband's significantly greater earning capacity, additional resources available to him, and his education level, which was made possible by the fact that [Wife] stayed at home with the children, has resulted in [Wife's] requiring time to secure and improve her earning capacity to a reasonable level to support herself and four (4) children.

The Court finds the most notable factor in Tennessee Code Annotated § 36-5-121(i), to be Factor six (6), which is the extent to which it would be undesirable for a party to seek employment outside of the home because such party will be custodian of the children. The Court finds that [Wife] is serving as primary residential parent, while also engaging in a work from home job. Though [Husband] is critical of her present earnings, the Court finds that [Husband's] own testimony reflects the acknowledgement that someone will need to be more available to the children. Therefore, the Court noted that "you can't criticize someone for accommodating children's schedules and staying out of the workforce for almost 15 years, while also recognizing that these children need care."

Accordingly, the previously outlined marital asset division and transitional alimony award is appropriate in this case due to the fact [Wife] is considerably economically disadvantaged in comparison to [Husband] and is in need of financial assistance in adjusting to the economic consequences of the divorce.

Based on [Wife's] Income and Expense Statement, which the Court finds to be reasonable and appropriate, the Court finds that the amount of $5,000.00 is just enough to cover [Wife's] monthly expenses and [Husband] is capable of paying that amount.

(Paragraph numbering omitted.)

In addition, in other portions of its final order, the trial court rendered general factual findings that are relevant to the alimony analysis, including that (1) Husband was guilty of inappropriate marital conduct for having an extra-marital relationship, (2) Wife's employment history was brief because she had stayed home with the Children, and (3) Wife was not willfully underemployed. The court also noted:

> [Wife] is at a significant disadvantage in earning potential and potential employment, despite her degree, by virtue of being out of the workforce. Additionally, even after [Wife] obtains work, she will have to account for childcare expenses and time off from work to care for the children.

Following our thorough review of the evidence presented, we conclude that the proof supports the trial court's findings. The evidence established that during the parties' fifteen-year marriage, Wife had stayed home a majority of the time caring for the Children—one of whom was medically fragile as an infant—while Husband had worked and trained to further his education, career, and earnings. As a result, Husband had a much greater earning capacity than Wife, as well as a superior ability to maintain gainful employment. Although neither party suffered from any significant physical impairment thwarting his or her employability, Wife was limited in her employment opportunities by the demands of caring for the Children and her lack of work history. The proof evinced that both parties had made substantial contributions to the marriage—Husband as wage earner and Wife by remaining home with the Children and allowing Husband to pursue substantial training and educational opportunities.

Wife's statement of income and expenses demonstrated that she was the economically disadvantaged spouse and had a need for alimony while Husband's financial information established that he had the ability to pay. In fact, Husband testified during trial that he thought Wife's request for alimony was "reasonable, very much so." Moreover, Husband was found to be at fault for the marriage's dissolution. Accordingly, based on the facts presented and the applicable statutory factors, we agree that Wife was entitled to an award of alimony. By reason of Wife's demonstrated need and Husband's ability to pay, we further find the amount of the transitional alimony award to be proper.

As our Supreme Court has explained:

> Simply put, [transitional] alimony "aid[s] the person in the transition to the status of a single person." *Mills v. Mills*, No. M2009-02474-COA-R3-CV, 2010 WL 3059170, at *5 (Tenn. Ct. App. Aug. 4, 2010); *see also Montgomery v. Silberman*, No. M2009-00853-COA-R3-CV, 2009 WL 4113669, at *2 (Tenn. Ct. App. Nov. 24, 2009) (affirming trial court's award of transitional alimony to wife "to bridge the gap, so to speak, between her married life and single life"); *Engesser v. Engesser*, 42 So. 3d 249, 251 (Fla. Dist. Ct. App. 2010) (en banc) (describing transitional alimony as "[b]ridge-

the-gap alimony" designed to "smooth the transition of a spouse from married to single life"). In contrast to rehabilitative alimony, which is designed to increase an economically disadvantaged spouse's *capacity* for self-sufficiency, transitional alimony is designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income.

*Gonsewski*, 350 S.W.3d at 109.

Regarding the length of the transitional alimony award, in previous cases where the award length was questioned, this Court has affirmed an award of transitional alimony for a period of up to nine years. *See*, *e.g.*, *Buntin v. Buntin*, 673 S.W.3d 593, 610 (Tenn. Ct. App. 2023) (holding that a transitional alimony award of up to seven years' duration was reasonable); *Knizley v. Knizley*, No. M2018-00490-COA-R3-CV, 2019 WL 6358208, at *5 (Tenn. Ct. App. Nov. 27, 2019) (holding that a transitional alimony award of nine years' duration was appropriate); *Miller v. McFarland*, No. M2013-00381-COA-R3-CV, 2014 WL 2194382 at *8 (Tenn. Ct. App. May 23, 2014) (holding that a period of eight years is not an unreasonable duration for an award of transitional alimony). Clearly, however, the length of the award should be determined by consideration of the statutory factors listed above. *See* Tenn. Code Ann. § 36-5-121(i) (stating that the statutory factors should be considered when determining whether an award of spousal support is appropriate, and if so, "the nature, amount, <u>length of term</u>, and manner of payment" to be awarded) (emphasis added).

Based on the evidence presented, we conclude that the trial court's award of transitional alimony to Wife for a period of six years was appropriate. Wife maintained no significant work history during the marriage and would therefore be hampered in her ability to earn an income from which she could pay the debt on the marital residence and her other reasonable expenses without assistance. Wife presented clear evidence that she was the economically disadvantaged spouse and that she "need[ed] financial assistance in adjusting to the economic consequences of the divorce." *See Gonsewski*, 350 S.W.3d at 109. Because Wife's income at the time of trial was only $500.00 per month and because she would be limited in the employment she could seek while still providing care for four children, we do not find an abuse of discretion in the trial court's decision to provide her with six years of "financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income." *See id.* We therefore determine Husband's issue concerning the length of the transitional alimony award to be unavailing.

- 22 -

## B. Alimony *in Solido*

Husband also argues that the trial court erred by awarding attorney's fees to Wife as alimony *in solido*. Husband posits that the alimony *in solido* award was unjust because Wife received a slightly greater share of the marital assets in the court's equitable distribution and was also granted transitional alimony. Moreover, Husband asserts that the trial court failed to make adequate findings to support the *in solido* award.

At the conclusion of trial, the court orally stated that it was "willing to consider the request for attorneys' fees that are being made by the parties" and requested that both parties submit affidavits demonstrating the total amount of fees incurred. The court explained that it would take those amounts into consideration when entering its final order. Wife's counsel subsequently submitted an affidavit of fees, which is contained in the appellate record. However, the record includes no such affidavit filed by Husband's counsel.

Regarding an award of attorney's fees as alimony *in solido*, our Supreme Court has instructed:

> It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido. The decision whether to award attorney's fees is within the sound discretion of the trial court. As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses or the spouse would be required to deplete his or her resources in order to pay them. Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony.

*Gonsewski*, 350 S.W.3d at 113 (citations omitted). Alimony *in solido* "may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." *Id.* at 108 (quoting Tenn. Code Ann. § 36-5-121(d)(5)). "When reviewing the trial court's decision to award attorney's fees as alimony *in solido*, we must consider the same factors contained in Tennessee Code Annotated § 36-5-121(i) that we considered when analyzing the transitional alimony award." *Buntin*, 673 S.W.3d at 612.

We have previously determined that the trial court properly predicated its transitional alimony award to Wife upon application of the relevant statutory factors to the

evidence presented at trial. The trial court made significant findings concerning the alimony factors, and the court's findings were supported by a preponderance of the evidence. The same evidence supports the trial court's award of alimony *in solido*. Wife was economically disadvantaged compared to Husband. Due to her status as a stay-at-home parent during the marriage, Wife had significantly fewer employment prospects and a much lower earning capacity, and she would thus have less ability to replace assets. Accordingly, Wife should not be required to deplete her limited liquid assets in order to defray the costs of the divorce. *See Gonsewski*, 350 S.W.3d at 113. We conclude that the trial court did not abuse its discretion in awarding alimony *in solido* to Wife for her reasonable attorney's fees.

Regarding the reasonableness of the fee award, Wife's attorney filed an affidavit of fees on December 29, 2023, demonstrating that Wife had incurred attorney's fees in the amount of $10,127.00 during the divorce proceedings. Wife's counsel stated in the affidavit that the fees were "reasonable and necessary for the proper representation of [Wife's] interests" in the proceedings. In its final order, the trial court awarded this amount to Wife as alimony *in solido*.

In his appellate brief, Husband criticizes the trial court for "failing" to make adequate findings regarding the statutory provisions applicable to an award of attorney's fees as alimony *in solido*, which are found in Tennessee Code Annotated § 36-5-121(h)(1)(B):

> Alimony in solido may be awarded for attorney fees and expenses incurred in connection with the proceedings through the date of the final hearing and any proceedings brought pursuant to Rule 59 of the Tennessee Rules of Civil Procedure. When determining whether attorney fees and expenses should be awarded as alimony in solido, the court shall consider the following:
>
> (i)     The factors enumerated in subsection (i);
>
> (ii)    The total amount of attorney fees and expenses incurred and the total amount of attorney fees and expenses paid by each party in connection with the proceedings;
>
> (iii)   Whether the attorney fees and expenses requested are reasonable under the factors set forth in Rule 1.5 of the Tennessee Rules of Professional Conduct; and
>
> (iv)    Whether the attorney fees and expenses were necessary.

Aside from his assertions regarding the trial court's factual findings and the applicable statutory factors, which we have already addressed, Husband simply argues that "no

testimony was provided regarding the reasonableness of the fees." While this is true, we reiterate that Wife's counsel filed an affidavit regarding the fee amount, expressly stating that the fees were "reasonable and necessary." Husband filed no opposition to the affidavit, filed no countervailing affidavit, and failed to file a motion seeking a hearing concerning the fees or otherwise objecting to the fee amount sought.

As this Court has explained:

"'[A] trial court is not required to hold a hearing as to the reasonableness of the amount of attorney's fees awarded unless a party makes a timely request.'" *Talley v. Talley*, No. E2016-01457-COA-R3-CV, 2017 WL 1592770, at *14 (Tenn. Ct. App. May 1, 2017) (quoting *Cremeens v. Cremeens*, No. M2014-01186-COA-R3-CV, 2015 WL 4511921, at *12 (Tenn. Ct. App. July 24, 2015)).

[A] trial judge may fix the fees of lawyers in causes pending or which have been determined by the court, with or without expert testimony of lawyers and with or without a prima facie showing by plaintiffs of what a reasonable fee would be. Should a dispute arise as to the reasonableness of the fee awarded, then in the absence of any proof on the issue of reasonableness, it is *incumbent* upon the party challenging the fee to pursue the correction of that error in the trial court by insisting upon a hearing upon that issue.

*Kline v. Eyrich*, 69 S.W.3d 197, 210 (Tenn. 2002) (quotations and bracketing omitted). In the absence of any request for a hearing, the party challenging the fee on appeal must "convince the appellate courts that he was denied the opportunity to do so through no fault of his own." *Moran v. Willensky*, 339 S.W.3d 651, 664 (Tenn. Ct. App. 2010).

*In re Samuel P.*, No. W2016-01665-COA-R3-JV, 2018 WL 1046784, at *20 (Tenn. Ct. App. Feb. 23, 2018).

Here, Husband failed to challenge the fee amount in the trial court or to request a hearing regarding the issue. Moreover, Husband has made no allegation to this Court that he was "denied the opportunity to do so through no fault of his own." *See id.* The trial court implicitly found the fee amount reasonable when awarding the full amount in its final order, and Husband did not file a motion to alter or amend or otherwise seek any relief in the trial court concerning this issue. We therefore conclude that the trial court did not abuse its discretion concerning the amount of the fee award.

## VI.  Debt Refinancing

Finally, Husband complains that the trial court should have required Wife to refinance the debt on the marital residence and remove his obligation thereto before the youngest child's eighteenth birthday.  Husband asserts that the trial court's timeframe for refinancing is unreasonable and violates Tennessee case law requiring that parties be "released from joint debt."  In support, Husband cites *Mobley v. Caffa-Mobley*, No. M2011-02269-COA-R3-CV, 2012 WL 5986544, at *7 (Tenn. Ct. App. Nov. 30, 2012), and *Dobbs v. Dobbs*, No. M2011-01523-COA-R3-CV, 2012 WL 3201938, at *4 (Tenn. Ct. App. Aug. 7, 2012), both of which involved a marital asset that was awarded to one spouse without making provision for the other spouse's release from the associated debt.

In both *Mobley* and *Dobbs*, a marital asset—improved real property—was awarded to one spouse, along with the associated debt, but the respective trial courts made no provision in the final judgment for the other spouse's release from that debt obligation.  *See Mobley*, 2012 WL 5986544, at *7; *Dobbs*, 2012 WL 3201938, at *4.  Therefore, both the *Mobley* and *Dobbs* non-owner spouses were "indefinitely obligated."  *See Mobley*, 2012 WL 5986544, at *7; *see, e.g.*, *Dobbs*, 2012 WL 3201938, at *4.  In both cases, this Court remanded the issue to the trial court to set a reasonable time for the asset owner to refinance or otherwise secure the other party's release from the joint debt.  *See id.*

By contrast, here, the trial court did not require Husband to remain responsible for the mortgage debt indefinitely.  Instead, the trial court set a definite period of time within which Wife would be required to finance that debt.  We therefore find Husband's reliance on *Mobley* and *Dobbs* to be misplaced.  We further reiterate Husband's testimony at trial that he desired for Wife to be awarded the marital residence and its attendant debt, stating that he was "perfectly fine" with his name remaining on the loan "for interest."

Moreover, as this Court has previously explained regarding joint debt:

In divorce proceedings, courts cannot disturb the rights of the parties' creditors to collect joint obligations from either or both of the divorcing parties. *Blake v. Amoco Fed. Credit Union*, 900 S.W.2d 108, 111 (Tex. App. 1995).

It is not uncommon in divorce cases to turn over the ownership of a marital asset to one party while the parties remain jointly liable for the debt associated with the asset.  While it is possible to order one party to make the monthly payments on a joint debt, the court cannot absolve the other party from his or her liability to the creditor.  It is also unlikely that a creditor will readily agree to release a solvent debtor simply because of a divorce.  Thus, if the party who has been ordered to make the monthly payments on a joint

debt defaults, the other party becomes responsible for the debt and the late charges and runs the risk of damage to his or her credit rating.

Courts and lawyers have devised several ways to address this problem. The court may order, or the parties may agree, that the person awarded the property will refinance it or obtain a new loan in his or her own name and then use the proceeds to pay off the existing joint debt. The court may also order, or the parties may agree, that the property will be owned jointly until a date certain when the property must either be financed or sold. Finally, the parties or the courts may include a "hold harmless" provision in the decree or marital dissolution agreement in which the parties are required to indemnify and hold each other harmless from any and all future obligations stemming from ownership of the property they receive.

*Long v. McAllister-Long*, 221 S.W.3d 1, 10 (Tenn. Ct. App. 2006).

In this matter, the trial court ordered that Wife would refinance the debt on the marital residence and remove Husband's obligation when "all of the children reach the age of eighteen (18)." The court also specified that until the debt was refinanced, Wife would be solely responsible for paying the monthly payments on the mortgage debt. We determine this to be in accordance with Tennessee law. *See id.* Although this Court has previously found that the above provisions in a final decree carry an implicit conclusion that Husband would be held harmless from the mortgage debt by Wife, *see Brown v. Brown*, 577 S.W.3d 206, 217 (Tenn. Ct. App. 2018), we modify the trial court's final order to add a provision expressly stating that Wife will indemnify and hold Husband harmless from the mortgage obligation related to the marital residence until such time as the debt is paid off or Wife is able to refinance it in her own name, which should occur no later than the time when all of the Children reach the age of eighteen.

VII. Attorney's Fees on Appeal

Wife has sought an award of attorney's fees incurred in defending against this appeal. Pursuant to Tennessee Code Annotated § 36-5-103(c) (West July 1, 2021, to current):

A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the nonprevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, <u>or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing</u>.

(Emphasis added.)  As this Court has explained concerning this statutory provision:

> The discretion to award attorney's fees on appeal in a proceeding of this nature rests within the discretion of the Court.  *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995).  When considering a request for attorney's fees on appeal, we also consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the requesting party sought the appeal in good faith, and any other equitable factors relevant in a given case.

*Chase v. Chase*, 670 S.W.3d 280, 304-05 (Tenn. Ct. App. 2022) (quoting *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005)).  *See also Henderson v. Henderson*, No. M2013-01879-COA-R3-CV, 2014 WL 4725155, at *12 (Tenn. Ct. App. Sept. 23, 2014) ("This statute authorizes the award of attorney fees incurred at trial as well as on appeal.").

Wife properly raised the issue of attorney's fees on appeal in her brief's statement of the issues.  Reviewing the respective financial positions of the parties, as well as Husband's lack of success on appeal, we determine that this is an appropriate case in which to award reasonable appellate attorney's fees to Wife.  We therefore remand this matter to the trial court for a determination of the appropriate amount of those fees to be awarded.

## VIII.  Conclusion

For the foregoing reasons, we affirm the trial court's judgment with the minor modification of an added provision stating that Wife will indemnify and hold Husband harmless from the mortgage debt on the marital residence until it is paid in full or refinanced.  We also award to Wife her reasonable attorney's fees incurred on appeal.  Accordingly, we remand this case to the trial court for a determination of the amount of reasonable appellate attorney's fees to be awarded to Wife and entry of an appropriate judgment.  Costs on appeal are assessed to the appellant, Calvin Albert Rowe, III.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE